UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELAINE KNIGHT,

      PLAINTIFF,

VS.                  NO. 3:02CV1697(AWT)

HARTFORD HOSPITAL, ET AL,

      DEFENDANTS.

---

DEPOSITION OF: ELAINE KNIGHT

---

Taken before Kathleen S. Norton, Registered Professional Reporter, Lic./Reg. No. 00105, and Notary Public in and for the State of Connecticut, pursuant to Notice, at the offices of Shipman & Goodwin, One American Row, Hartford, Connecticut on July 2, 2003, commencing at 9:35 a.m.

ANDREWS REPORTING SERVICE
Cheshire, CT  06410
Tel: (203) 271-2190

**ORIGINAL**

```
 1                          APPEARANCES
 2
 3        Representing the Plaintiff:
 4            MINITER & ASSOCIATES
              147 Charter Oak Avenue
 5            Hartford, Connecticut   06106
              By: CHRISTINE CORRIVEAU, ESQ.
 6
 7        Representing the Defendant: Hartford Hospital
 8            SHIPMAN & GOODWIN
              One American Row
 9            Hartford, Connecticut   06103
              By: GREGG P. GOUMAS, ESQ.
10
11        Representing the Defendant: City of Hartford
12            Offices of the Corporation Counsel
              City of Hartford
13            550 Main Street
              Hartford, CT   06106
14            By: ANN F. BIRD, ESQ.
15
16
17   ALSO PRESENT:
18   Lynn Satherlie
19
20
21
22
23
24
25
```

```
 1   Q   When were you originally diagnosed?
 2   A   I don't know that date off the top of my head
 3       either.
 4   Q   Was it prior to the time that you started at
 5       the 21st Century Program?
 6   A   Yes.
 7   Q   Was it during the year -- and you started with
 8       the 21st Century Program, I believe, in the --
 9       well, you tell me.  When was it that you
10       started?
11   A   January, I think the 8th, of 2001.
12   Q   So the beginning of 2001 pretty much.  Were you
13       diagnosed, do you recall, during the year 2000?
14   A   Oh, yes.
15   Q   Was it prior to the year 2000?
16   A   Yes.
17   Q   Was it in 1999?
18   A   Yes, I believe so, but I could not specify the
19       exact date.  I would have to go back through
20       some medical records, but it was prior to the
21       21st Century.
22   Q   Have you ever made an application for Social
23       Security Disability benefits?
24   A   Yes, I have.
25   Q   And when did you make that application?
```

| | | |
|---|---|---|
| 1 | Q | Is that her assistant, Ms. Irizarry's |
| 2 | | assistant? |
| 3 | A | I knew her as a secretary. I didn't know her |
| 4 | | official title. |
| 5 | Q | The first paragraph reads, "On Friday, June 15, |
| 6 | | 2001, Ms. Knight came to the main office and |
| 7 | | from the counter she asked me if she could see |
| 8 | | Ms. Irizarry, principal. I told her |
| 9 | | Ms. Irizarry's calendar was full for Friday, |
| 10 | | however, I suggested she could make an |
| 11 | | appointment for the following Monday, June 18." |
| 12 | | Did you go to the main office to see |
| 13 | | Ms. Irizarry on June 15? |
| 14 | A | Yes. |
| 15 | Q | Why did you go there? |
| 16 | A | She had informed Lynn that she would meet with |
| 17 | | me to explain why my office had been dismantled |
| 18 | | without pre-notification, and a month had |
| 19 | | expired, approximately a month had expired, and |
| 20 | | no one would tell me why. Because I had -- |
| 21 | | well, basically to find out when she would be |
| 22 | | able to meet with me. |
| 23 | Q | And did Ms. Santana tell you that |
| 24 | | Ms. Irizarry's calendar was full for that day? |
| 25 | A | No. |

| | | |
|---|---|---|
| 1 | Q | She never told you that? |
| 2 | A | No. |
| 3 | Q | Did she ask you to make an appointment? |
| 4 | A | No. |
| 5 | Q | What, if anything, did you say to -- when you |
| 6 | | first approached the counter and asked to |
| 7 | | see -- did you ask to see Ms. Irizarry? |
| 8 | A | Yes. |
| 9 | Q | What else did you say? |
| 10 | A | I said I was coming in to inquire about my |
| 11 | | office being dismantled, and that she had |
| 12 | | informed Lynn she would meet with me.  It was a |
| 13 | | couple of weeks earlier and had not.  And I |
| 14 | | didn't know, and it was the end of the year and |
| 15 | | I wanted to know what had occurred before the |
| 16 | | school calendar year ended.  That was basically |
| 17 | | it. |
| 18 | Q | What did she say to you?  When I say "she," I |
| 19 | | mean Ms. Santana. |
| 20 | A | She held up a paper and said, "She can't see |
| 21 | | you.  She won't be able to see you until the |
| 22 | | fall."  And that was it.  That was it.  That |
| 23 | | was it.  That was the conversation. |
| 24 | Q | Are you quoting her verbatim? |
| 25 | A | Well, I'm kind of paraphrasing, but that's |

1  told me?
2  A  No.
3  Q  After you met with Mr. Lopez, did you go and
4     meet with Mr. Santiago?
5  A  Yes.
6  Q  And where did you go to meet with Mr. Santiago?
7  A  In his -- it was the outer office. It was like
8     an outer -- an open office area.
9  Q  And did Mr. Santiago tell you that he couldn't
10    meet with you at that moment?
11 A  Yes, he did.
12 Q  Because he had a meeting, a previously
13    scheduled meeting?
14 A  I'm not sure of his reason, whether he just
15    said he was involved in something, but he said
16    he couldn't meet. He did state that.
17 Q  Did Mr. Santiago tell you he was willing to
18    meet with you after he was doing whatever it
19    was that he had to do?
20 A  I don't remember him stating that. I don't
21    remember him stating that.
22 Q  You said you met with him in the outer office?
23 A  Yes.
24 Q  Did you then follow him into his conference
25    room?

| | | |
|---|---|---|
| 1 | A | Uh-hum. |
| 2 | Q | When is the first time you got a copy of this memo? Did you ever receive a copy of this memo? |
| 5 | A | On, I believe June 21 when I was fired. I think that's the date. |
| 7 | Q | You didn't receive a copy of this prior to being terminated? You didn't receive a copy from Mr. Santiago directly? |
| 10 | A | I don't recall that, no. |
| 11 | Q | You don't recall, but he could have given you a copy? |
| 13 | A | I don't believe he did, no. |
| 14 | Q | You don't believe so? |
| 15 | A | No. |
| 16 | Q | Now, is it fair to say, if you look in the third paragraph, "During your verbal abuse toward me, which you were yelling, you used the following statements: You will not speak to me because I'm a Black woman. You called me a coward for not meeting at that precise moment." Is it fair to say that you deny ever saying those things? |
| 24 | A | Yes. |
| 25 | Q | And what, if anything, at the time -- what, if |

| | | |
|---|---|---|
| 1 | | anything, did you do at the time that you |
| 2 | | received this memo to deny that those things |
| 3 | | were ever said by you? |
| 4 | A | What did I -- |
| 5 | Q | Did you ever deny to anybody that you said |
| 6 | | those things? |
| 7 | A | When I met with Lynn Satherlie and Susan on the |
| 8 | | 21st? |
| 9 | Q | Did you deny to Ms. Satherlie that you ever |
| 10 | | made these comments to Mr. Santiago? |
| 11 | A | Yes. |
| 12 | Q | And if Ms. Satherlie were to testify that you |
| 13 | | didn't deny making these comments, would you |
| 14 | | claim that she would be lying? |
| 15 | A | If she said that I didn't deny it, yes. |
| 16 | Q | Did you ever put anything in writing denying |
| 17 | | the fact that you made these comments? |
| 18 | A | I was fired like on the -- I mean the 21st, so |
| 19 | | it was over. It was -- I was fired. I was no |
| 20 | | longer employed. |
| 21 | Q | Right. But you never made any document |
| 22 | | whatsoever, a memo, a note, whether to |
| 23 | | Ms. Satherlie, Ms. Maxwell, or anyone other |
| 24 | | than your attorneys denying that you made these |
| 25 | | comments? |

Page 113

1   A   No.

2   Q   If you turn back to Knight 32, the first page of Defendant's Exhibit 6. The third paragraph reads, "Later on, she came back to the main office but this time she did not speak to me and went directly to Ms. Irizarry's office and stood by the door. Ms. Irizarry was meeting with a teacher and asked Ms. Knight to excuse her. Ms. Knight got very upset. While walking away, said, You have an attitude problem and you know it."

After you met with Mr. Santiago, did you go back to the main office?

14   A   No.

15   Q   You didn't?

16   A   No.

17   Q   Were you ever standing -- on June 15, were you standing at any time outside of Ms. Irizarry's door looking into her office when she had another teacher in the office?

21   A   No.

22   Q   Did you ever say, while walking out of the office, words to the effect of, "You have an attitude problem"?

25   A   No.

| | | |
|---|---|---|
| 1 | Q | So if Ms. Santana were to testify that she |
| 2 | | heard you say words to the effect of, "You have |
| 3 | | an attitude problem and you know it," would you |
| 4 | | claim she would be lying? |
| 5 | A | Yes. |
| 6 | Q | And if Ms. Santana were to testify that you had |
| 7 | | come back to the main office after coming in |
| 8 | | earlier and went directly to speak with |
| 9 | | Ms. Irizarry and went and stood by the door, |
| 10 | | would she be lying? |
| 11 | A | Yes. |
| 12 | Q | I would like you to turn to the third page in |
| 13 | | of Defendant's Exhibit 6 which is labeled on |
| 14 | | the bottom right, Knight 34. Have you had an |
| 15 | | opportunity to review this letter? |
| 16 | A | Yes, I did. |
| 17 | Q | And when is the first time you saw this letter? |
| 18 | A | I am assuming, and I can't remember the exact |
| 19 | | date, on June -- I think that's the date I got |
| 20 | | fired that I saw these. I don't recall. |
| 21 | Q | So you're assuming that, but you know for a |
| 22 | | fact you did see this prior to being fired? |
| 23 | A | The day that I was fired, I felt that that's |
| 24 | | when I saw it. So I count it as one, yes. |
| 25 | Q | So you did see it at least on the day that you |

```
 1            were fired?
 2     A      Yes.
 3     Q      I'm going to read from the second paragraph.
 4            It reads, "I was in my office" -- this is a
 5            letter from Evelyn Irizarry to Ms. Satherlie,
 6            "I was in my office meeting with a teacher when
 7            Ms. Elaine Knight came to the door and stood
 8            there.  I asked her to please excuse us since
 9            we were having a meeting and still she did not
10            move.  She just kept looking at me.  I finally
11            asked her what can I do for her and her
12            response was, "I guess you're too busy to see
13            me.  Never mind."  I told her to please see my
14            secretary to schedule an appointment, and she
15            said, "I did, but everybody is too busy".  I
16            told her that it is true that we're all very
17            busy.  It's the closing of the school year.
18            She walked away mumbling something and giving
19            body language in a quite unprofessional
20            attitude.  I expressed my concern regarding her
21            attitude and she continued mumbling.  I did
22            hear her say, "You have an attitude."  There
23            were visitors in the main office who witnessed
24            this incident.  Had an HBOE employee behaved in
25            such a manner, I would have recommended
```

| | | |
|---|---|---|
| 1 | | suspension pending an investigation. This is |
| 2 | | clearly defiance and insubordination." |
| 3 | | Did you say to say Mrs. Irizarry, "I |
| 4 | | guess you're too busy to see me," or, "Never |
| 5 | | mind," or words to that effect? |
| 6 | A | No. |
| 7 | Q | You didn't say anything like that to her? |
| 8 | A | No. |
| 9 | Q | It's your testimony you weren't standing |
| 10 | | outside her door? |
| 11 | A | I was passing her on my way to Mr. Lopez's |
| 12 | | office. As I came by her door, she came out of |
| 13 | | her office just at the precise moment. |
| 14 | Q | What, if anything, did you say to her? |
| 15 | A | I stated that, "Lynn informed me that you were |
| 16 | | supposed to meet with me." She said she |
| 17 | | couldn't and I went to Mr. Lopez's office. |
| 18 | Q | You said nothing else? |
| 19 | A | Nothing else. |
| 20 | Q | If Ms. Irizarry were to state that you said to |
| 21 | | her words to the effect of, "You have an |
| 22 | | attitude," is it your claim she would be lying? |
| 23 | A | Yes. |
| 24 | Q | Do you have any idea, or is it your claim that |
| 25 | | if these people were to testify to the |

| | | |
|---|---|---|
| 1 | | substance of what's contained in these memos |
| 2 | | that Mr. Santiago, Ms. Irizarry, and |
| 3 | | Ms. Santana would all be lying? |
| 4 | A | Yes. |
| 5 | Q | Do you have any idea as to why they would all |
| 6 | | lie? |
| 7 | A | I would not know. I don't know why they took |
| 8 | | my office apart. I don't know anything. Like |
| 9 | | I said, I'm still in the dark about what |
| 10 | | happened and occurred. I don't know why a |
| 11 | | teacher got paid and shouldn't have. I'm in |
| 12 | | the dark. |
| 13 | Q | You have no idea why they would lie? |
| 14 | A | No. |
| 15 | Q | Do you have any reason to believe that any of |
| 16 | | these individuals that I have just named would |
| 17 | | in some way conspire to get you fired? |
| 18 | A | I really don't know what all occurred. Like I |
| 19 | | said, I went away one day and came back and it |
| 20 | | would be like any individual, your office is |
| 21 | | dismantled, documents are removed, things are |
| 22 | | removed. And I don't know any of it. My |
| 23 | | investigation to try to find out what happened |
| 24 | | ended up with statements being written that I |
| 25 | | didn't state and I got fired. So why it |

| | | |
|---|---|---|
| 1 | | occurred, you can tell me better than I know. |
| 2 | | I don't know. |
| 3 | Q | Do you have any reason -- do you have any |
| 4 | | basis -- strike that. |
| 5 | | Are you aware of any facts which you |
| 6 | | believe would suggest to Ms. Satherlie that |
| 7 | | these individuals who provided statements in |
| 8 | | Defendant's Exhibit 6 were lying? |
| 9 | A | Other than the fact that they are writing |
| 10 | | things that I didn't say and didn't occur, and |
| 11 | | the fact that when I inquired about the |
| 12 | | procedure for dismantling of the office space |
| 13 | | within the school system, I learned that what |
| 14 | | happened to me was not the usual occurrence. |
| 15 | | And the fact that Ms. Satherlie, herself, told |
| 16 | | me the principal, herself, stated she would |
| 17 | | come to me and tell me who had arranged it, to |
| 18 | | this day I still don't know who ordered the |
| 19 | | dismantling of my office, so I don't know.  I |
| 20 | | can't answer these questions.  I'm still in the |
| 21 | | dark. |
| 22 | Q | My question is:  You have no basis to believe |
| 23 | | that Ms. Satherlie had any facts, to her |
| 24 | | knowledge, which would suggest to her that |
| 25 | | these statements were untrue?  You don't know |

HARTFORD HOSPITAL                    Hartford Health Care Corporation

## ROLE DESCRIPTION

### SECTION 1: IDENTIFYING INFORMATION

Role Number:  
Role Title: 21st Century Project Coordinator  
Level:  
F.L.S.A. Status:  
Abbreviation:  
Salary Grade:  
Reports to:  

Date Prepared: 07/26/00  
Prepared By:  
Approved By:  
Date Approved:  
Word Filename: 21stcenturyjobdesc  

### SECTION 2: POSITION SUMMARY

Develop policies and procedures for student/family referral, service delivery and follow-up; coordinates, provides direct services, as required, works with Bulkeley High School administration and staff and other agencies to operationalize collaborative work; provide support to project advisory committee; prepares programmatic and statistical reports and evaluation-related activities as required; provides coverage in staff vacancies/emergencies.

### SECTION 3: ACCOUNTABILITIES

Work closely with the Project Director, the school principal and administrative staff, advisory committee and collaborating agencies on developing and implementing various 21st Century Project program components, shares responsibility for developing and operationalizing program collaborative agreements.

Coordinates a collaborative spectrum of Afterschool Programs for students and their families.

Develops and/or modifies operational policies and procedures for various components of the 21st Century Project; develops policies and procedures for students/family referral, intake, and follow-up.

Provides direct student /family services including intake/assessment, case/service coordination planning service monitoring and follow-up. May conduct home visits to engage parents in programming.

Orients and supervises program staff and provides effective liaison with the school staff.

Under the direction of the Project Director, completes programmatic reports; documents service provision in case notes and statistical logs, collects student evaluation data/participates in state-funded independent evaluation; attends state-wide and local grantee meetings as required.

Assist with funding applications for supplemental project funds and project renewals, as needed.

Participates in agency-sponsored seminars and conferences to increase professional knowledge and skills.

Participates in ongoing evaluation of own professional development through supervisory relationship.

Is knowledgeable of agency's policies and practices in the execution of project responsibilities.



DEFENDANT'S EXHIBIT 2  
KSN 7/2/03

## SECTION 4: DIMENSIONS

## SECTION 5: QUALIFICATIONS (Education, Experience, Additional Skills & Requirements)

BA with a minimum of two years managerial experience in such a setting and relevant to adolescent experiences
Ability to lead a service collaboration team
Knowledge of the Hartford community and adolescent and family support providers
Competency in working with diverse populations
Strong interpersonal communication skills
Understanding and sensitivity to variant family values
Ability to a "self-starter" and work with minimal supervision required
Bilingual/bicultural abilities (English/Spanish) preferred/desirable
Physically able to perform the essential functions of the position, with or without reasonable accommodations

## SECTION 6: WORK HOURS

Full-time, 12 months
Flexible hours to accommodate after school, weekend, and summer program needs

STATE OF CONNECTICUT   :
                       :  ss
COUNTY OF NEW HAVEN    :

I, SANDY K. VISENTIN, a Registered Professional Reporter and Notary Public duly commissioned and qualified in and for the State of Connecticut, do hereby certify that pursuant to notice there came before me on October 14, 2003, the following-named person to wit: ELAINE KNIGHT, who was by me duly sworn to testify to the truth and nothing but the truth; that she was thereupon carefully examined upon her oath and her examination reduced to writing under my supervision; that this deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney nor counsel for nor related to nor employed by any of the parties to the action in which this deposition is taken; and further, I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in this action.

IN WITNESS THEREOF, I have hereunto set my hand and affixed my seal this 16th day of October, 2003.

_Sandy K. Visentin_
SANDY K. VISENTIN
LSR, RPR and Notary Public
CT Lic. #SHR.234

My Commission Expires:
August 31, 2006