UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELAINE KNIGHT,                          :
                Plaintiff        :        CIVIL ACTION NO: 3:02CV1697 (MRK)
                                     :
v.                                      :
                                     :
HARTFORD HOSPITAL,                      :
HARTFORD PUBLIC SCHOOLS                 :
LYNN SATHERLIE and                      :
SUSAN MAXWELL,                          :        JANUARY 26, 2004
                Defendants       :

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OBJECTION TO
DEFENDANT HARTFORD HOSPITAL'S
MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

The Plaintiff in the above entitled matter hereby objects to Defendant Hartford Hospital's

Motion for Summary Judgment for the reasons herein contained.

## II.     FACTS:

Plaintiff was employed as Program Coordinator of the 21st Century Community Learning

Program beginning January 8, 2001. Knight Depo. P.16. The 21st Century Program is a federally

funded program that awards grants to urban and inner city public schools to enable them to plan

projects that benefit the needs of the community. (Affidavit of Knight ¶1) The Program requires

public schools to collaborate with other public non-profit organizations ("Lead Agencies") such as

the Hospital in order to meet the needs of and expand the opportunities available to the residents of

the community. As a Lead Agency, Hartford Hospital collaborates with the Hartford Public

Schools to administer the 21st Century Program at Bulkeley High School. (Affidavit of Lynn

1

Satherlie Deasy ¶4) (filed with Hartford Hospital's Motion for Summary Judgment Dated November 26, 2003.) Although she was employed by the Hospital, Knight performed her job duties as 21st Century Coordinator on-site at Bulkeley. (Affidavit of Knight ¶2, 6)

> The Role Description of the Coordinator of the 21st Century Program is as follows:
>
> Develop policies and procedures for student/family referral, service delivery and follow-up; coordinates, provides direct services as required, works with Bulkeley High School administration and staff and other agencies to operationalize collaborative work; provide support to project advisory committee; prepares programmatic and statistical reports and evaluation-related activities as required; provides coverage in staff vacancies/emergencies.

Deposition of Knight, Exhibit 2.

The Plaintiff contends that she was treated differently than similarly situated employees, in that she was not given access to basic office resources that the other employees were, such as phones, fax machine, copier, scissors, etc. despite numerous requests to her Supervisor, Lynn Satherlie. (Affidavit of Knight ¶7)

On or about Thursday, May 24, 2001, without any notice, the Plaintiff's office space was dismantled and files were removed from her desk without her knowledge or consent. Other white employees, such as Carmel Sinapoli, were given notice that their offices were to be dismantled. (Affidavit of Knight ¶8) Satherlie informed the Plaintiff that Ms. Irizarry, the Principal, would be meeting with the her to explain why her office had been removed. The meeting never took place. (Affidavit of Knight ¶8) Having her office dismantled prevented the Plaintiff from being a more productive worker. However, her work performance remained satisfactory or better, and despite the disruption, she completed the summer program. (Affidavit of Knight ¶9)

At no time did the Plaintiff's work suffer because of her husband's illness. The Plaintiff does not agree with the March 21st memo because she never received a copy of the document, nor does

2

she recall any such phone conversation with Satherlie. (Affidavit of Knight ¶10)

Satherlie and Hartford Hospital failed to supply the 21st Century Program with adequate supplies and asked the Plaintiff to purchase what was needed, which she did on several occasions. (Affidavit of Knight ¶11) When Madonna Noir (white) asked for supplies, Satherlie purchased them for her. Satherlie then began to purchase the supplies for the Program on a regular basis only after Madonna requested it. (Affidavit of Knight ¶11)

In January or February of 2001, the Plaintiff informed Lynn Satherlie that no transportation was being provided for the 21st Century's after school programs. (Affidavit of Knight ¶12) Satherlie told the Plaintiff to increase the number of programs in spite of no transportation being supplied to the program. (Affidavit of Knight ¶12) The Plaintiff was forced to drive students home herself, as well as find other teachers to provide transportation. (Affidavit of Knight ¶12, Affidavit of Outlaw ¶4) Despite this, the Plaintiff managed to create a new "self discipline" course, which required that she hire a qualified teacher, acquire a list of interested students, and find a padded classroom to conduct the class. Satherlie canceled the class a day before it was supposed to start. Then she gave the Plaintiff a poor performance reviews indicating that she did not create new programs. (Affidavit of Knight ¶12) The Plaintiff was also on the Board of Directors of the Literacy Volunteers of Hartford and was attempting to put together an adult program in connection with that, but could not do so because of lack of transportation. (Affidavit of Knight ¶12) Satherlie gave the Plaintiff a poor performance reviews indicating that she did not create new programs, although the only reason she did not do so was because of Satherlie's influence and the lack of transportation. (Affidavit of Knight ¶12) When the Plaintiff spoke to Ms. Satherlie regarding the poor performance reviews, she acknowledged that they were due to the fact that it was difficult to start new programs because of

3

the lack of transportation.   (Affidavit of Knight ¶12) She stated that "any new program usually had

difficulty getting off the ground."   (Affidavit of Knight ¶12) Ms. Satherlie stated that it would be

easier for the Plaintiff in the Fall when there would be transportation to support the programs offered

by the 21st Century Program.   (Affidavit of Knight ¶12) Satherlie told the Plaintiff not to be

concerned with the poor performance reviews. (Affidavit of Knight ¶12)

The Plaintiff made numerous attempts to hire bus transportation for the 21st Century

Programs.  (Affidavit of Knight ¶13) When she informed Satherlie about the lack of transportation,

Satherlie told the Plaintiff to ask Hartford Public Schools for the money.  (Affidavit of Knight ¶13)

Hartford Public Schools told the Plaintiff that Hartford Hospital must pay for it. (Affidavit of Knight

¶13)  Finally, the Plaintiff succeeded in obtaining bus transportation on or about May 30, 2001 after

Earl Gardener became Program Director for the Hartford Board of Education.  (Affidavit of Knight

¶13) The Plaintiff asked Madonna Noir to call Mr. Gardner to ask about the buses.  She was told that

the funds were gone for transportation. (Affidavit of Knight ¶13)   The Plaintiff then called Mr.

Gardner back and asked him how there could be no funds for transportation when the 21st Century

Program never had a bus. (Affidavit of Knight ¶13)  The Plaintiff then told Mr. Gardner that without

buses, there would be no more 21st Century Program.  (Affidavit of Knight ¶13) That evening, Mr.

Gardner provided two buses for the program.  (Affidavit of Knight ¶13)

The Plaintiff does not agree with the April 21, 2001 memo because she was not given the

resources to run the 21st Century Program.  Not only was she not given the transportation, she was

not given the supplies and office equipment to adequately run the program.  (Affidavit of Knight

¶14)   The only way the 21st Century Program had some office supplies was when some of the

employees brought in their own equipment from home.  For example, Erica Stanisclaus brought in

4

a fax machine from home for the 21st Century Program to use.   (Affidavit of Knight ¶14)

On or about April 30, 2001, the Plaintiff informed Satherlie that Emil Nace had falsified his time sheets regarding his teaching an SAT class.  (Affidavit of Knight ¶15) Satherlie told the Plaintiff to pay him anyway.  (Affidavit of Knight ¶15) She then conducted an investigation into the matter, polling the students with questionnaires on whether they had attended Mr. Nace's class. (Affidavit of Knight ¶15) The Plaintiff and other teachers were in the process of collecting the questionnaires when Defendant Hartford Public Schools caused the Plaintiff's office to be dismantled and files were removed, one of which contained the results of the questionnaires.(Affidavit of Knight ¶15)  Because the files were removed, the Plaintiff could offer no "credible" evidence of Mr. Nace's falsification of documents.  (Affidavit of Knight ¶15) Up until the files were removed, the Plaintiff had the following evidence against Mr. Nace: 1) All of the signatures on the Parent authorizations looked the same; 2) Mr. Nace claimed to have taught classes during the week of school vacation, when the school was closed and 3) one of the students Mr. Nace claims to have had in his class, Ardita Ruco,  was attending another class on the same day; and 4) upon giving Mr. Nace applications to give to the students, he returned all of them to the Plaintiff on the following day.  No other teacher has ever collected applications from the students participating in their class overnight. (Affidavit of Knight ¶15)

During an extremely brief June 6, 2001 phone conversation with Ms. Satherlie, the Plaintiff did not lie regarding missing the mandatory 21st Century meeting.  The Plaintiff  had both suffered a seizure that morning and she had also been speaking with Madonna Noir.  Both reasons are true and they are not mutually exclusive.  (Affidavit of Knight ¶16)

On June 15, 2001, the Plaintiff entered the office and spoke to Margarita Santana.  (Affidavit

of Knight ¶17) The Plaintiff requested a meeting with Vice Principal Santiago to find out why her office had been dismantled.  (Affidavit of Knight ¶17) Ms. Santana told the Plaintiff he would not be able to see her until the Fall.  (Affidavit of Knight ¶17) She then suggested that the Plaintiff see Vice Principal Lopez. (Affidavit of Knight ¶17) On her way to Mr. Lopez's office, she ran into Principal Irizarry. (Affidavit of Knight ¶17) The Plaintiff told her that Satherlie had told the Plaintiff that Irizarry would tell her why her  office was dismantled. (Affidavit of Knight ¶17)  Irizarry told her she did not have the time to meet with her. (Affidavit of Knight ¶17) She went to Mr. Lopez's office, but he did not know what had happened to the Plaintiff's office. (Affidavit of Knight ¶17) At that time, the Plaintiff started to cry, and Mr. Lopez allowed her to cry in his office for quite a while. (Affidavit of Knight ¶17) Mr. Lopez told the Plaintiff that she  would have to talk to Vice Principal Santiago. (Affidavit of Knight ¶17) She went and looked into Mr. Santiago's office, but he told the Plaintiff that he did not have time to meet with her. (Affidavit of Knight ¶17)

On June 15, 2001, the Plaintiff did not make any inappropriate comments to Principal Irizarry, Vice Principal Santiago or Margarita Santana.  She never said "you have an attitude."  She never said to anyone that "you will not speak to me because I'm a black woman," and she did not call Vice Principal Santiago a coward.  She did not raise her voice at any time. (Affidavit of Knight ¶18)   On June 21, 2001, Susan Maxwell terminated the Plaintiff because of alleged "poor performance" and insubordination. (Affidavit of Knight ¶19)

Satherlie treated African Americans differently than Caucasians.  For example,  Satherlie fired a black female teacher, Antoinette Outlaw, because she allegedly lied on her job application. Another teacher, Emil Nace, a white male, falsified attendance and permission slips, and Satherlie told the Plaintiff  "What difference does it make, pay him anyway." (Affidavit of Knight ¶20) Ms.

6

Outlaw did not lie on her job application.       In or about February, 2001, Ms. Outlaw learned from a friend who knew Elaine Knight about a job opportunity with the 21st Century Program.  This program was run by Hartford Hospital, but it was operated out of Bulkeley High School. (Affidavit of Outlaw ¶1) The Plaintiff told Ms. Outlaw that she needed to contact Lynn Satherlie, the Director of the program, and Cory Blumthal, a Human Resources person with Hartford Hospital.  (Affidavit of Outlaw ¶2) Both Lynn and Cory asked Ms. Outlaw to come in for orientation.(Affidavit of Outlaw ¶2)

     Ms. Outlaw went to Hartford Hospital and filled out the application.  The application requested information regarding any felony charges within the last five years. (Affidavit of Outlaw ¶3) Ms. Outlaw asked Cory Blumthal if she had to list a felony charge that occurred long ago, even though she did not know the exact date. (Affidavit of Outlaw ¶3) Ms Blumthal told Ms. Outlaw that she did not have to list it, since it occurred so long ago.  (Affidavit of Outlaw ¶3)  Ms. Outlaw was hired to teach the Drill Step Program and the Art Program for the 21st Century Program.  (Affidavit of Outlaw ¶4)

     After Ms. Outlaw worked for the program for approximately one month, Ms. Knight told her that she was asked to terminate Ms. Outlaw for something that showed up in her background record.  The only felony charge against Ms. Outlaw was from 1986. (Affidavit of Outlaw ¶5)  The application asked for any felonies within the past 5 years, and this charge was 15 years before the time of her application. (Affidavit of Outlaw ¶5)

     Ms. Satherlie also asked Ms. Knight to terminate one of her employees, either Ms. Noir (white) or Ms. Stanisclaus (black.)  When Ms, Knight chose to keep Ms. Stanisclaus on the payroll, Ms. Satherlie decided that she would keep both of them.  Ms. Knight testified as follows:

> A.    One day I cam in the office and Lynn took me to another room and told me that the program couldn't hire two part time assistants and that I had to make decision between Erica Stanislaus or Madonna.  And I informed Lynn that I would have to choose Erica because she was on Board, she was there, and Madonna was only on board on a volunteer basis. ...
>
> Q.    So its your testimony that Ms. Satherlie came to you and told you that you had to choose one or the other?
>
> A.    Yes.
>
> Q.    But in fact, didn't they both continue to work for you and both get paid?
>
> A.    That was what I originally stated.  She said she would keep them on board. That was Lynn's decision.  She said if I had to make a choice between one or the other, I said I would choose Erica.  Upon making that statement, Lynn decided that she would also pay Madonna.  If I had a choice between one of the two, it would have been Erica because I felt it would have been wrong to dismiss – I had previously dismissed a Black woman earlier and now I'm paying a caucasian who is clearly showing through evidence that he didn't teach, but I was told to pay him because it wasn't that much money.  Now I'm being told to fire – to make a choice between a Black or a White woman. You have no idea what that is like to continually deal with that type of racism on a daily – not daily, but to be confronted with that kind of thing.  And I didn't want to be in the shoes of having to have the kind of character against my own, no.  I couldn't do it.

Knight Depo. p. 128-30.

Ms. Satherlie treated the Plaintiff in a very disrespectful manner on a number of occasions. Her tone with the Plaintiff was condescending.  (Affidavit of Knight ¶20) For example, during a parent-teacher meeting, when the Plaintiff attempted to present her program goals and objectives to the group, Ms. Satherlie berated the Plaintiff in front of the entire group, insinuating that she had left out important material from the plan. (Affidavit of Knight ¶20) However, the Plaintiff pointed out to Ms. Satherlie that the information was already contained in the document in question. (Affidavit of Knight ¶20) Ms. Satherlie had not even bothered to read the plan before she berated and insulted the Plaintiff in public.(Affidavit of Knight ¶20)

The Plaintiff also testified in her deposition that Ms. Satherlie treated part-time white employees in a more respectful manner than she treated the Plaintiff, who was a full-time Director

of the 21st Century Program:

> Q:      .... Are you claiming that Ms. Satherlie addressed you in a disrespectful manner?
>
> A.      Courteous.  She tended to be polite, kind and more friendly toward Madonna than me.
>
> Q.      Can you provide me with any specifics of how you were treated such as it states here in your sworn response to Interrogatory 7?
>
> A.      She would come in and sometimes she would question Madonna about things and I would stand there and either have - if I was talking to Lynn, Madonna would interrupt me, interject and say, "I can find this, I can do that."  And I felt that they just had developed a rapport, you know, where I was not in the loop.
>
> Q.      I would like you to identify for me any specific events that you can recall in which you claim that Ms. Satherlie or Ms. Maxwell, spoke with you disrespectfully, Any specific events, specific conversations?
>
> A.      Well, when Lynn sat in the cafeteria that day and she said that I was a liar, that I was lying to her, the day I didn't make the meeting, I thought that that was totally out of order because she didn't really give me a chance to talk. And after I explained it to her, she still went and wrote it up that I was lying to her.  So, I just felt that was a lack of respect....
>
> Q.      Is there anything about that conversation to suggest to you that she was showing you disrespect because you're African-American?
>
> A.      It was a tone and manner.  It was always a demeaning tone and manner.  It was an overall general tone and manner.

Knight Depo p. 211-213.

To the best of Plaintiff's knowledge and belief, Reesa Cannada complied with the Hospital's pre-employment hiring process.  (Affidavit of Knight ¶21) Reesa Cannada stated that Satherlie would not pay her back pay unless she misrepresented that she taught the Fall 2001 Drill/Step class. (Affidavit of Knight ¶21)

## III.    ARGUMENT

### A.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides for the granting of a summary

judgment motion if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of summary judgment is to determine whether a trial will be necessary. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247-48 (1986). However, "[t]he [Plaintiff's] burden of establishing a prima facie case... is not onerous" Fisher v. Vassar College, 114 F.3d. 1332 (2d. Cir. 1997) citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). In fact, Plaintiff's burden of establishing a prima facie case of discrimination has frequently been described as "minimal." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

### B.    Plaintiff has made out a case of disparate treatment  race discrimination

In order for the Plaintiff to make out a prima facie case for disparate treatment race discrimination, she must establish 1) She is a member of a protected class; 2) she was qualified for her position 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Because the facts inevitably vary in different employment discrimination cases, both the Supreme Court and Second Circuit have explained that the "prima facie proof required" in a given case will depend on the specific facts in question. McDonnell Douglas, 411 U.S. at 802 n. 13; Mcguinness V. Lincoln Hall, 263 F.3d 49, 53 (2nd Cir. 2001).

Once the Plaintiff has made out a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* If the employer articulates a legitimate non-

discriminatory reason, the plaintiff then must prove that the articulated justification is a pretext for discrimination. *See* <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502-510-11 (1993).

     **(1)    Plaintiff's prima facie case.**

         **(a)    "Out of Pocket" Expenses**

The Plaintiff claims differential treatment because she was forced to pay for office supplies out of pocket (Knight Depo p.147-48), while Madonna Noir, who is white, simply requested that Satherlie provide the office supplies and Satherlie did so. (Knight Depo p. 142-45) The Defendants argue that 1) Knight only paid for supplies on two or three occasions 2) the cost of the supplies was insignificant and 3) that Ms. Noir was not similarly situated so that there can be no comparison between Ms. Knight and Ms. Noir.

Ms. Knight may have only paid for office supplies a few times, but she was only employed at Hartford Hospital for a few months before Ms. Noir was hired. This makes the incidence of having to purchase office supplies out of pocket a much more frequent event than if she was employed for a very long time. Second, the word "insignificant" is <u>defendant's counsel's</u> word.

> Q..... What was the total dollar amount of the funds you had to advance?
> A. I'm not quite sure.
> Q. You don't know?
> A. I can't remember the exact dollar amount.
> Q. It wasn't a significant amount, was it?
> A. No, it wasn't a significant amount.

(Knight Depo 148-49)

The Plaintiff expressed that the out of pocket funds were important to her.

> A. .... I purchased them out of my pocket which meant took part of my salary instead of using it towards my mortgage or my child's tuition in college, I used my salary in order to run the 21st Century. That's not what I was working for.

(Knight Depo p. 147-48)

The Plaintiff did not dismiss the sums as insignificant. In fact, no matter how the Defendants try to categorize the different treatment as insignificant, different treatment is still different treatment and amounts to discrimination.

Lastly, the Defendants argue that Ms. Noir and Ms. Knight are not similarly situated because Ms. Knight was the head of the 21st Century Program and Ms. Noir worked for her. In fact, using that rationale, Ms. Knight could never prove even the most blatant discrimination because she was the only head of the 21st Century program. "A plaintiff is not obligated to show disparate treatment of an *identically* situated employee. To the contrary, Shumway holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom plaintiff points be similarly situated in all material respects." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001), citing Shumway v. United Parcel Service, 118 F.3d 60, 64 (2d Cir. 1997). In the case at bar, Ms. Noir was an employee of the 21st Century Program, employed by Hartford Hospital, with an office located in Bulkeley High School, and she answered to Lynn Satherie, as did the Plaintiff. Ms. Noir and Ms. Knight were similarly situated in all material respects.

### (b)     Inflexible hours

The Plaintiff concedes that she did not request flexible hours from the Defendant.

### (c)     Disrespectful treatment of Plaintiff

Ms. Satherlie treated the Plaintiff in a very disrespectful manner on a number of occasions. Her tone with the Plaintiff was condescending. (Affidavit of Knight ¶20) For example, during a parent-teacher meeting, when the Plaintiff attempted to present her program goals and objectives to the group, Ms. Satherlie berated the Plaintiff in front of the entire group, insinuating that she had

left out important material from the plan. (Affidavit of Knight ¶20) However, the Plaintiff pointed out to Ms. Satherlie that the information was already contained in the document in question. (Affidavit of Knight ¶20) Ms. Satherlie had not even bothered to read the plan before she berated and insulted the Plaintiff in public.(Affidavit of Knight ¶20)

The Plaintiff also testified in her deposition that Ms. Satherlie treated part-time white employees in a more respectful manner than she treated the Plaintiff, who was a full-time Director of the 21st Century Program:

Q:      .... Are you claiming that Ms. Satherlie addressed you in a disrespectful manner?

A.      Courteous.  She tended to be polite, kind and more friendly toward Madonna than me.

Q.      Can you provide me with any specifics of how you were treated such as it states here in your sworn response to Interrogatory 7?

A.      She would come in and sometimes she would question Madonna about things and I would stand there and either have - if I was talking to Lynn, Madonna would interrupt me, interject and say, "I can find this, I can do that."  And I felt that they just had developed a rapport, you know, where I was not in the loop.

Q.      I would like you to identify for me any specific events that you can recall in which you claim that Ms. Satherlie or Ms. Maxwell, spoke with you disrespectfully, Any specific events, specific conversations?

A.      Well, when Lynn sat in the cafeteria that day and she said that I was a liar, that I was lying to her, the day I didn't make the meeting, I thought that that was totally out of order because she didn't really give me a chance to talk. And after I explained it to her, she still went and wrote it up that I was lying to her.  So, I just felt that was a lack of respect....

Q.      Is there anything about that conversation to suggest to you that she was showing you disrespect because you're African-American?

A.      It was a tone and manner.  It was always a demeaning tone and manner.  It was an overall general tone and manner.

Knight Depo p. 211-213.

The Defendants are asking the Plaintiff for hard proof that Ms. Satherlie was disrespectful towards her in her tone and manner.  This is not a suitable subject for a Motion for Summary

Judgment, because it is a credibility issue that a jury would need to assess after hearing the evidence in person from both sides.   In determining whether a genuine issue actually exists and, thus, whether or not summary judgment is appropriate, courts may "not . . . weigh the evidence, but [are] instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); Fed.R.Civ.P. 56(e).

        **(d)    Nace Allegedly Received Pay for Hours he did not Work, while Plaintiff worked Normal Hours Plus Overtime and Did not Receive Overtime Pay.**

Defendant did not make an argument.

        **(e)    Satherlie Fired a Black Teacher because she allegedly Lied on her Job Application But told Plaintiff to pay a white teacher who had falsified Attendance and permission slips.**

Satherlie treated African Americans differently than Caucasians.   Satherlie fired a black female teacher, Antoinette Outlaw, because she allegedly lied on her job application.   Another teacher, Emil Nace, a white male, falsified attendance and permission slips, and Satherlie told the Plaintiff "What difference does it make, pay him anyway." (Affidavit of Knight ¶20) Ms. Outlaw did not lie on her job application.        In or about February, 2001, Ms. Outlaw learned from a friend who knew Elaine Knight about a job opportunity with the 21st Century Program.  This program was run by Hartford Hospital, but it was operated out of Bulkeley High School. (Affidavit of Outlaw ¶1) The Plaintiff  told Ms. Outlaw that she  needed to contact Lynn Satherlie, the Director of the program, and Cory Blumthal, a Human Resources person with Hartford Hospital.  (Affidavit of Outlaw ¶2) Both Lynn and Cory asked Ms. Outlaw to come in for orientation.(Affidavit of Outlaw

¶2)

Ms. Outlaw went to Hartford Hospital and filled out the application.  The application requested information regarding any felony charges within the last five years. (Affidavit of Outlaw ¶3) Ms. Outlaw asked Cory Blumthal if she had to list a felony charge that occurred long ago, even though she did not know the exact date. (Affidavit of Outlaw ¶3) Ms Blumthal told Ms. Outlaw that she did not have to list it, since it occurred so long ago.  (Affidavit of Outlaw ¶3)  Ms. Outlaw was hired to teach the Drill Step Program and the Art Program for the 21st Century Program.  (Affidavit of Outlaw ¶4)

After Ms. Outlaw worked for the program for approximately one month, Ms. Knight told her that she was asked to terminate Ms. Outlaw for something that showed up in her background record.  The only felony charge against Ms. Outlaw was from 1986. (Affidavit of Outlaw ¶5)  The application asked for any felonies within the past 5 years, and this charge was 15 years before the time of her application. (Affidavit of Outlaw ¶5)

On or about April 30, 2001, the Plaintiff informed Satherlie that Emil Nace had falsified his time sheets regarding his teaching an SAT class.  (Affidavit of Knight ¶15) Satherlie told the Plaintiff to pay him anyway.  (Affidavit of Knight ¶15) The Plaintiff then conducted an investigation into the matter, polling the students with questionnaires on whether they had attended Mr. Nace's class.  (Affidavit of Knight ¶15) The Plaintiff and other teachers were in the process of collecting the questionnaires when Defendant Hartford Public Schools caused the Plaintiff's office to be dismantled and files were removed, one of which contained the results of the questionnaires.(Affidavit of Knight ¶15)  Because the files were removed, the Plaintiff could offer no "credible" evidence of Mr. Nace's falsification of documents.  (Affidavit of Knight ¶15) Up until

15

the files were removed, the Plaintiff I had the following evidence against Mr. Nace: 1) All of the signatures on the Parent authorizations looked the same; 2) Mr. Nace claimed to have taught classes during the week of school vacation, when the school was closed and 3) one of the students Mr. Nace claims to have had in his class, Ardita Ruco, was attending another class on the same day. (Affidavit of Knight ¶15) This evidence would have proven that Mr. Nace did not teach the program, but unfortunately the Defendants or their agents removed the files before Plaintiff had a chance to produce them.

The Plaintiff contends that Ms. Satherlie treated Mr. Nace, a white man, who allegedly lied and stole from the program, differently than she treated Ms. Outlaw, who did nothing illegal and filled out her application the way she was required. The Defendants have been unable to produce Ms. Outlaw's job application, which Ms. Outlaw claims would have shown only felonies committed within the past five years needed to be disclosed. (Affidavit of Outlaw ¶5).

> **(f)    Failure to supply resources, transportation and Administrative support - Unfair Expectations Placed on Plaintiff by Satherlie to Transport Students in her car.**

The Plaintiff alleges that the failure of Hartford Hospital to supply her with resources was an attempt to sabotage her efforts to run the 21st Century Program. For Example, in January or February of 2001, the Plaintiff informed Lynn Satherlie that no transportation was being provided for the 21st Century's after school programs. (Affidavit of Knight ¶12) Satherlie insisted that the Plaintiff increase the number of programs in spite of the inadequate transportation. (Affidavit of Knight ¶12) The Plaintiff was forced to drive students home herself, as well as find other teachers to provide transportation. (Affidavit of Knight ¶12, Affidavit of Outlaw ¶4) Despite this, the Plaintiff managed to create a new "self discipline" course, which required that she hire a qualified teacher,

16

acquire a list of interested students, and find a padded classroom to conduct the class.  (Affidavit of Knight ¶12) Satherlie canceled the class a day before it was supposed to start.  (Affidavit of Knight ¶12) Then she gave the Plaintiff a poor performance reviews indicating that she did not create new programs. (Affidavit of Knight ¶12) The Plaintiff was also on the Board of Directors of the Literacy Volunteers of Hartford and was attempting to put together an adult program in connection with that, but could not do so because of lack of transportation.  (Affidavit of Knight ¶12)

The only way Plaintiff was able to acquire supplies was after a white office worker, Madonna Noir, requested the supplies.  Then Satherlie acquiesced and began purchasing them. Likewise, the Plaintiff's program only began receiving transportation after Earl Gardener became Program Director for the Hartford Board of Education. (Affidavit of Knight ¶13) The Plaintiff asked Madonna Noir to call Mr. Gardner to ask about the buses.  She was told that the funds were gone for transportation. (Affidavit of Knight ¶13)  The Plaintiff then called Mr. Gardner back and asked him how there could be no funds for transportation when the 21st Century Program never had a bus. (Affidavit of Knight ¶13)  The Plaintiff then told Mr. Gardner that without buses, there would be no more 21st Century Program.  (Affidavit of Knight ¶13) That evening, Mr. Gardner provided two buses for the program.  (Affidavit of Knight ¶13)

The Defendants argue that the Plaintiff cannot make out a claim of race discrimination because the other programs and employees that the Plaintiff compares herself to are not similarly situated to Plaintiff.  Unfortunately, the Plaintiff was in a unique position and in a unique program. This causes a problem, wherein Plaintiff cannot possibly prove that she was discriminated against as compared to similarly situated employees.  However, the law takes this into account.  "A plaintiff

17

is not obligated to show disparate treatment of an *identically* situated employee.  To the contrary, <u>Shumway</u> holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom plaintiff points be similarly situated in all material respects." <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001), *citing* <u>Shumway v. United Parcel Service</u>, 118 F.3d 60, 64 (2d Cir. 1997).  In the case at bar, Ms. Noir was an employee of the 21st Century Program, employed by Hartford Hospital, with an office located in Bulkeley High School, and she answered to Lynn Satherie, as did the Plaintiff.  Ms. Noir and Ms. Knight were similarly situated in all material respects.    The special treatment that Ms. Noir received was evidence that a similarly situated employee was treated differently from Plaintiff.  Likewise, the fact that other after school programs had bus transportation and the Plaintiff's program didn't have it is also proof of disparate treatment.

### (g)    Satherlie's Unfair hiring practices

The Defendant completely mischaracterizes the Plaintiff's claims that Satherlie had unfair hiring practices.  First of all, the Defendant refers to the "Knight Depo., p. 187, 1n. 14-24," which consists of the following testimony, offered by counsel:

> Q.    I asked you a few minutes ago what you were referring to in Exhibit 8 in your response at 5B where you referred to Lynn's unfair hiring practice, and you stated that Erica and Antoinette had to go through the Hartford Hospital application process but Mr. Nace did not, and that you were told that  you had to terminate Ms. Outlaw.  Other than these items, is there anything else that you're referring to with respect to Lynn's alleged unfair hiring practice?
> A.    No.

Apparently, Mr. Goumas believes he can testify for Ms. Knight a lot more succinctly than she can for herself.  Actually, Ms. Knight testified for three pages, in her <u>own</u> words, why she felt Ms.

18

Satherlie discriminated against Ms. Outlaw and Ms. Stanisclaus. (Knight Depo p. 184-87.) Ms. Knight testified that Ms. Outlaw and Ms. Stanisclaus were put through certain procedures, but that these procedures were waived for Mr. Nace, a while male. (Knight Depo p. 184-85; 186 ln. 11-13.) Ms. Knight also believes that she was asked to terminate Ms. Outlaw for allegedly lying on her application but encouraged to pay Ms. Nace after he falsified records. Ms. Outlaw did nothing wrong - her application requested that she list any felonies which occurred within the last five years. (Outlaw Affidavit ¶3) Her only felony occurred in 1986. (Outlaw Affidavit ¶5) She asked Cory Blumthal, the Human Resources person, whether she was required to list it and was told not to list it. (Outlaw Affidavit ¶3) Defendant Hartford Hospital has misplaced Ms. Outlaw's application.

Ms. Knight believed that she had proof that Mr. Nace had falsified records and was unjustly receiving payment for his services, which Satherlie indulged. Up until Ms. Knight's office was dismantled and files were removed, the Plaintiff had the following evidence against Mr. Nace: 1) All of the signatures on the Parent authorizations looked the same; 2) Mr. Nace claimed to have taught classes during the week of school vacation, when the school was closed and 3) one of the students Mr. Nace claims to have had in his class, Ardita Ruco, was attending another class on the same day; and 4) upon giving Mr. Nace applications to give to the students, he returned all of them to the Plaintiff on the following day. No other teacher has ever collected applications from the students participating in their class overnight. (Affidavit of Knight ¶15)    In any event Defendant mischaracterizes the Plaintiff's claims that Ms. Satherlie had unfair hiring processes.

### (h)    Satherlie Allegedly told Plaintiff to Ignore Warning letters.

The Defendants claim that Satherlie did not tell the Plaintiff to ignore the warning letters and performance reviews. However, the Plaintiff disagrees. In January or February of 2001, the

Plaintiff informed Lynn Satherlie that no transportation was being provided for the 21st Century's

after school programs. (Affidavit of Knight ¶12) Satherlie told the Plaintiff to increase the number

of programs in spite of no transportation being supplied to the program. (Affidavit of Knight ¶12)

The Plaintiff was forced to drive students home herself, as well as find other teachers to provide

transportation. (Affidavit of Knight ¶12, Affidavit of Outlaw ¶4) Despite this, the Plaintiff managed

to create a new "self discipline" course, which required that she hire a qualified teacher, acquire a

list of interested students, and find a padded classroom to conduct the class. Satherlie canceled the

class a day before it was supposed to start. Then she gave the Plaintiff a poor performance reviews

indicating that she did not create new programs. (Affidavit of Knight ¶12) The Plaintiff was also

on the Board of Directors of the Literacy Volunteers of Hartford and was attempting to put together

an adult program in connection with that, but could not do so because of lack of transportation.

(Affidavit of Knight ¶12) Satherlie gave the Plaintiff a poor performance reviews indicating that she

did not create new programs, although the only reason she did not do so was because of Satherlie's

influence and the lack of transportation. (Affidavit of Knight ¶12) When the Plaintiff spoke to Ms.

Satherlie regarding the poor performance reviews, she acknowledged that they were due to the fact

that it was difficult to start new programs because of the lack of transportation. (Affidavit of Knight

¶12) She stated that "any new program usually had difficulty getting off the ground." (Affidavit

of Knight ¶12) Ms. Satherlie stated that it would be easier for the Plaintiff in the Fall when there

would be transportation to support the programs offered by the 21st Century Program. (Affidavit of

Knight ¶12) Satherlie told the Plaintiff not to be concerned with the poor performance reviews.

(Affidavit of Knight ¶12)

      Again , the Defendants are asking the Plaintiff for hard proof regarding conversations that

took place privately between Ms. Knight and Ms. Satherlie.  This is not a suitable subject for a Motion for Summary Judgment, because it is a credibility issue that a jury would need to assess after a hearing.   In determining whether a genuine issue actually exists and, thus, whether or not summary judgment is appropriate, courts may "not . . . weigh the evidence, but [are] instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); Fed.R.Civ.P. 56(e).

       (i)       **Plaintiff's Office was dismantled and Satherlie failed to Support Knight or seek an Explanation from Bulkeley Administrators.**

On or about Thursday,  May 24, 2001, while the Plaintiff was out of work to attend her child's graduation, without any notice, her office space was dismantled and files were removed from her desk without my knowledge or consent. (Knight Affidavit ¶8)  The only person who knew the Plaintiff would not be in work that day was her Supervisor at Hartford Hospital, Lynn Satherlie.(Knight Affidavit ¶8)   Other white employees, such as Carmel Sinapoli, were given notice by the Hartford Public Schools that their offices were to be dismantled. (Knight Affidavit ¶8)  Afterward, Satherlie informed the Plaintiff that she would be relocated to another office, but that did not occur.  (Knight Affidavit ¶8)  Satherlie informed the Plaintiff that Ms. Irizarry,  the Principal, would be meeting with the me to explain why her office had been removed. (Knight Affidavit ¶8)  The meeting never took place.  (Knight Affidavit ¶8)

The Plaintiff alleges that Satherlie was the only individual that knew Plaintiff would be out of the office on the date her office was dismantled.  The Hartford Public Schools generally notified

its white employees when it relocated their offices, but Plaintiff was not informed, and further it appears that the Defendants acted in concert to dismantle her office at a time when she would not be available to object.

**(j)    Outlaw was Allegedly not paid on time while Nace was paid promptly**

The Defendants argue that both Ms. Outlaw and Mr. Nace were paid for their time within twenty days. This is not true. It took Hartford Hospital over a month to pay Antoinette Outlaw her wages, when she was supposed to be paid on a bi-weekly basis. (Outlaw Affidavit ¶7)  It was two to three weeks <u>after</u> she was fired before she received a paycheck.  (Outlaw Affidavit ¶7) The Defendants argue that it took twenty days from the time they requisitioned her paycheck before she was paid, the same as Nace. The flaw in the Defendant's argument is that Ms. Outlaw had worked for a whole month before they requisitioned her paycheck. So it took one month plus 20 days for Ms. Outlaw to receive her pay, while it took Mr. Nace only twenty days to be paid.

**(k)    Reesa Cannade was not paid for six months, while Nace was paid within a reasonable time.**

The Defendants allege that Ms. Cannada was not paid promptly because she did not go through the necessary administrative procedures to become a Hospital employess. To the best of Plaintiff's knowledge and belief, Reesa Cannada complied with the Hospital's pre-employment hiring process. (Affidavit of Knight ¶21) It's Plaintiff's belief that Ms. Cannada was not paid earlier because Satherlie would not pay her back pay unless she misrepresented that she taught the Fall 2001 Drill/Step class. (Affidavit of Knight ¶21)

**(2)    The Hospital did not have legitimate Non-Discriminatory Reasons for Terminating the Plaintiff's employment.**

22

The Hospital did not have any legitimate non-discriminatory reasons for terminating the Plaintiff's employment. Simply put, the charges made against the Plaintiff are untrue. First, the Plaintiff did not lie to Ms. Satherlie regarding the reasons why she did not attend the 21st Century meeting. She told Ms. Satherlie that she had been speaking to Madonna Noir on the telephone, which was true, and also that she had had a seizure that morning, which is also true. (Affidavit of Knight ¶16) These reasons certainly do not contradict one another.

Second, the Plaintiff denies that she displayed rude and disrespectful behavior to the Bulkely High School Administrators. The Plaintiff was upset about having her office dismantled, but at no time did she or would she act in the manner attributed to her.

Third, the similar dismissive treatment of two black women (Elaine Knight and Antoinette Outlaw) suggests that Defendants were engaged in a sham task of hiring minorities and terminating them within a short period of time to simulate compliance with affirmative action directives without having any intent to retain the minority employees. This inference is strengthened by the fact that Nace, a white man, could get away with theft and remain employed.

**C.    There is ample evidence to support that the Plaintiff was subjected to Race Based Harassment**.

In order to show a race based, hostile work environment, a Plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d at 570 (internal quotation marks omitted). In the case at bar, the Plaintiff has attempted to prove a series of incidents that altered the conditions of her employment. In one instance, Ms. Satherlie asked the Plaintiff to choose between firing Ms. Noir, a white woman, and Ms. Stanisclaus, a black woman. When the Plaintiff chose to keep Ms. Stanisclaus, Ms. Satherlie

decided that she would not fire either woman. See Depo of Knight p. 128-30. Satherlie also instructed the Plaintiff to fire Ms. Outlaw for allegedly failing to note a felony charge on her job application. However, as noted previously, the job application asked only for felonies within the past five years and the felony in question happened 15 years before she applied to the 21st Century program. The Plaintiff then questioned Ms. Satherlie whether Mr. Nace actually taught the SAT prep course he claimed to have taught. Ms. Satherlie told the Plaintiff to "pay him anyway." Satherlie put the Plaintiff in the position of making employment decisions for her employees based on the color of their skin rather than their conduct. The Plaintiff believe this led to a racially hostile environment.

**IV.    CONCLUSION**

The Court should deny the Defendant Hartford Hospital's Motion for Summary Judgment.


PLAINTIFF


By: _____

Christine E. Corriveau, Esq.

Miniter & Associates

100 Wells Street.

Hartford, CT 06103

(860) 560-2590

Federal Bar # No.: ct21212


<u>CERTIFICATION</u>


This is to certify that a copy of the foregoing has been mailed to the following counsel of record this ___ day of January, 2004:

Gregg P. Goumas

Shipman & Goodwin, LLP

One American Row

Hartford, CT 06103


Ann F. Bird, Esq.

Assistant Corporation Counsel

City of Hartford

550 Main Street

Hartford, CT 06103


_____

Christine E. Corriveau