# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELAINE KNIGHT,                    :

          Plaintiff       :     CIVIL ACTION NO: 3:02CV1697 (MRK)

                            :

v.                             :

                            :

HARTFORD HOSPITAL,        :

HARTFORD PUBLIC SCHOOLS   :

LYNN SATHERLIE and        :

SUSAN MAXWELL,          :     JANUARY 26, 2004

          Defendants     :

## PLAINTIFF'S 56(a)(2) STATEMENT

**FACTS IN DISPUTE:**

1.     The Plaintiff contends that she was treated differently than similarly situated employees, in that she was not given access to basic office resources that the other employees were, such as phones, fax machine, copier, scissors, etc. despite numerous requests to her Supervisor, Lynn Satherlie. (Affidavit of Knight ¶7)

2.     On or about Thursday, May 24, 2001, without any notice, the Plaintiff's office space was dismantled and files were removed from her desk without her knowledge or consent.

3.     Other white employees, such as Carmel Sinapoli, were given notice that their offices were to be dismantled.   (Affidavit of Knight ¶8)

4.     Satherlie informed the Plaintiff that Ms. Irizarry,  the Principal, would be meeting with the her to explain why her office had been removed.  The meeting never took place. (Affidavit of Knight ¶8)

5.     Having her office dismantled prevented the Plaintiff from being a more productive worker.  However, her work performance remained satisfactory or better, and despite the disruption,

she completed the summer program. (Affidavit of Knight ¶9)

6.      At no time did the Plaintiff's work suffer because of her husband's illness.  The Plaintiff does not agree with the March 21st memo because she never received a copy of the document, nor does she recall any such phone conversation with Satherlie. (Affidavit of Knight ¶10)

7.      Satherlie and Hartford Hospital failed to supply the 21st Century Program with adequate supplies and asked the Plaintiff to purchase what was needed, which she did on several occasions.  (Affidavit of Knight ¶11)

8.      When Madonna Noir (white) asked for supplies, Satherlie purchased them for her. Satherlie then began to purchase the supplies for the Program on a regular basis only after Madonna requested it.  (Affidavit of Knight ¶11)

9.      In January or February of 2001, the Plaintiff informed Lynn Satherlie that no transportation was being provided for the 21st Century's after school programs. (Affidavit of Knight ¶12)

10.      Satherlie told the Plaintiff to increase the number of programs in spite of no transportation being supplied to the program. (Affidavit of Knight ¶12)

11.      The Plaintiff was forced to drive students home herself, as well as find other teachers to provide transportation. (Affidavit of Knight ¶12, Affidavit of Outlaw ¶4)

12.      Despite this, the Plaintiff managed to create a new "self discipline" course, which required that she hire a qualified teacher, acquire a list of interested students, and find a padded classroom to conduct the class.  Satherlie canceled the class a day before it was supposed to start. Then she gave the Plaintiff a poor performance reviews indicating that she did not create new programs. (Affidavit of Knight ¶12)

13.    The Plaintiff was also on the Board of Directors of the Literacy Volunteers of Hartford and was attempting to put together an adult program in connection with that, but could not do so because of lack of transportation.  (Affidavit of Knight ¶12)

14.    Satherlie gave the Plaintiff a poor performance reviews indicating that she did not create new programs, although the only reason she did not do so was because of Satherlie's influence and the lack of transportation.  (Affidavit of Knight ¶12)

15.    When the Plaintiff spoke to Ms. Satherlie regarding the poor performance reviews, she acknowledged that they were due to the fact that it was difficult to start new programs because of the lack of transportation.   (Affidavit of Knight ¶12) She stated that "any new program usually had difficulty getting off the ground."  (Affidavit of Knight ¶12) Ms. Satherlie stated that it would be easier for the Plaintiff in the Fall when there would be transportation to support the programs offered by the 21st Century Program.  (Affidavit of Knight ¶12)

16.    Satherlie told the Plaintiff not to be concerned with the poor performance reviews. (Affidavit of Knight ¶12)

17.    The Plaintiff made numerous attempts to hire bus transportation for the 21st Century Programs.  (Affidavit of Knight ¶13) When she informed Satherlie about the lack of transportation, Satherlie told the Plaintiff to ask Hartford Public Schools for the money.  (Affidavit of Knight ¶13) Hartford Public Schools told the Plaintiff that Hartford Hospital must pay for it. (Affidavit of Knight ¶13)

18.    Finally, the Plaintiff succeeded in obtaining bus transportation on or about May 30, 2001 after Earl Gardener became Program Director for the Hartford Board of Education.  (Affidavit of Knight ¶13) The Plaintiff asked Madonna Noir to call Mr. Gardner to ask about the buses.  She

was told that the funds were gone for transportation. (Affidavit of Knight ¶13)  The Plaintiff then

called Mr. Gardner back and asked him how there could be no funds for transportation when the 21st

Century Program never had a bus. (Affidavit of Knight ¶13)  The Plaintiff then told Mr. Gardner that

without buses, there would be no more 21st Century Program.  (Affidavit of Knight ¶13) That

evening, Mr. Gardner provided two buses for the program.  (Affidavit of Knight ¶13)

19.     The Plaintiff does not agree with the April 21, 2001 memo because she was not given

the resources to run the 21st Century Program.  Not only was she not given the transportation, she

was not given the supplies and office equipment to adequately run the program.  (Affidavit of Knight

¶14)   The only way the 21st Century Program had some office supplies was when some of the

employees brought in their own equipment from home.  For example, Erica Stanisclaus brought in

a fax machine from home for the 21st Century Program to use.   (Affidavit of Knight ¶14)

20.     On or about April 30, 2001, the Plaintiff informed Satherlie that Emil Nace had

falsified his time sheets regarding his teaching an SAT class.  (Affidavit of Knight ¶15) Satherlie

told the Plaintiff to pay him anyway.  (Affidavit of Knight ¶15)

21.     She then conducted an investigation into the matter, polling the students with

questionnaires on whether they had attended Mr. Nace's class.  (Affidavit of Knight ¶15) The

Plaintiff and other teachers were in the process of collecting the questionnaires when Defendant

Hartford Public Schools caused the Plaintiff's office to be dismantled and files were removed, one

of which contained the results of the questionnaires.(Affidavit of Knight ¶15)

22.     Because the files were removed, the Plaintiff could offer no "credible" evidence of

Mr. Nace's falsification of documents.  (Affidavit of Knight ¶15) Up until the files were removed,

the Plaintiff had the following evidence against Mr. Nace: 1) All of the signatures on the Parent

authorizations looked the same; 2) Mr. Nace claimed to have taught classes during the week of school vacation, when the school was closed and 3) one of the students Mr. Nace claims to have had in his class, Ardita Ruco,  was attending another class on the same day; and 4) upon giving Mr. Nace applications to give to the students, he returned all of them to the Plaintiff on the following day.  No other teacher has ever collected applications from the students participating in their class overnight. (Affidavit of Knight ¶15)

23.    During an extremely brief June 6, 2001 phone conversation with Ms. Satherlie, the Plaintiff did not lie regarding missing the mandatory 21st Century meeting.  The Plaintiff  had both suffered a seizure that morning and she had also been speaking with Madonna Noir.  Both reasons are true and they are not mutually exclusive.  (Affidavit of Knight ¶16)

24.    On June 15, 2001, the Plaintiff entered the office and spoke to Margarita Santana. (Affidavit of Knight ¶17)

25.    The Plaintiff requested a meeting with Vice Principal Santiago to find out why her office had been dismantled.  (Affidavit of Knight ¶17)

26.    Ms. Santana told the Plaintiff he would not be able to see her until the Fall. (Affidavit of Knight ¶17)

27.    She then suggested that the Plaintiff see Vice Principal Lopez. (Affidavit of Knight ¶17)

28.    On her way to Mr. Lopez's office, she ran into  Principal Irizarry. (Affidavit of Knight ¶17) The Plaintiff told her that Satherlie had told the Plaintiff that Irizarry would tell her why her  office was dismantled. (Affidavit of Knight ¶17)  Irizarry told her she did not have the time to meet with her. (Affidavit of Knight ¶17)

5

29.     She went to Mr. Lopez's office, but he did not know what had happened to the Plaintiff's office. (Affidavit of Knight ¶17) At that time, the Plaintiff started to cry, and Mr. Lopez allowed her to cry in his office for quite a while. (Affidavit of Knight ¶17) Mr. Lopez told the Plaintiff that she would have to talk to Vice Principal Santiago. (Affidavit of Knight ¶17)

30.     She went and looked into Mr. Santiago's office, but he told the Plaintiff that he did not have time to meet with her. (Affidavit of Knight ¶17)

31.     On June 15, 2001, the Plaintiff did not make any inappropriate comments to Principal Irizarry, Vice Principal Santiago or Margarita Santana.  She never said "you have an attitude."  She never said to anyone that "you will not speak to me because I'm a black woman," and she did not call Vice Principal Santiago a coward.  She did not raise her voice at any time. (Affidavit of Knight ¶18)

32.      Satherlie fired a black female teacher, Antoinette Outlaw, because she allegedly lied on her job application.   Another teacher, Emil Nace, a white male, falsified attendance and permission slips, and Satherlie told the Plaintiff "What difference does it make, pay him anyway." (Affidavit of Knight ¶20)

33.     Ms. Outlaw did not lie on her job application.  In or about February, 2001, Ms. Outlaw learned from a friend who knew Elaine Knight about a job opportunity with the 21st Century Program.  (Affidavit of Outlaw ¶1)

34.     The Plaintiff told Ms. Outlaw that she needed to contact Lynn Satherlie, the Director of the program, and Cory Blumthal, a Human Resources person with Hartford Hospital.  (Affidavit of Outlaw ¶2)

35.     Both Lynn and Cory asked Ms. Outlaw to come in for orientation.(Affidavit of

Outlaw ¶2)

36.    Ms. Outlaw went to Hartford Hospital and filled out the application.  The application

requested information regarding any felony charges within the last five years. (Affidavit of Outlaw

¶3)

37.    Ms. Outlaw asked Cory Blumthal if she had to list a felony charge that occurred long

ago, even though she did not know the exact date. (Affidavit of Outlaw ¶3)

38.    Ms Blumthal told Ms. Outlaw that she did not have to list it, since it occurred so long

ago.  (Affidavit of Outlaw ¶3)

39.    The only felony charge against Ms. Outlaw was from 1986. (Affidavit of Outlaw ¶5)

The application asked for any felonies within the past 5 years, and this charge was 15 years before

the time of her application. (Affidavit of Outlaw ¶5)

40.    Ms. Satherlie also asked Ms. Knight to terminate one of her employees, either Ms.

Noir (white) or Ms. Stanisclaus (black.)  When Ms, Knight chose to keep Ms. Stanisclaus on the

payroll, Ms. Satherlie decided that she would keep both of them.

41.    Ms. Knight testified as follows:

A.    One day I cam in the office and Lynn took me to another room and told me
      that the program couldn't hire two part time assistants and that I had to make
      decision between Erica Stanislaus or Madonna.  And I informed Lynn that
      I would have to choose Erica because she was on Board, she was there, and
      Madonna was only on board on a volunteer basis. ...
Q.    So its your testimony that Ms. Satherlie came to you and told you that you
      had to choose one or the other?
A.    Yes.
Q.    But in fact, didn't they both continue to work for you and both get paid?
A.    That was what I originally stated.  She said she would keep them on board.
      That was Lynn's decision.  She said if I had to make a choice between one
      or the other, I said I would choose Erica.  Upon making that statement, Lynn
      decided that she would also pay Madonna.  If I had a choice between one of
      the two, it would have been Erica because I felt it would have been wrong to

7

> dismiss – I had previously dismissed a Black woman earlier and now I'm paying a caucasian who is clearly showing through evidence that he didn't teach, but I was told to pay him because it wasn't that much money.  Now I'm being told to fire – to make a choice between a Black or a White woman.  You have no idea what that is like to continually deal with that type of racism on a daily – not daily, but to be confronted with that kind of thing.  And I didn't want to be in the shoes of having to have the kind of character against my own, no.  I couldn't do it.

Knight Depo. p. 128-30.

42.    Ms. Satherlie treated the Plaintiff in a very disrespectful manner on a number of occasions.  Her tone with the Plaintiff was condescending.  (Affidavit of Knight ¶20)

43.   During a parent-teacher meeting, when the Plaintiff attempted to present her program goals and objectives to the group, Ms. Satherlie berated the Plaintiff in front of the entire group, insinuating that she had left out important material from the plan. (Affidavit of Knight¶20)

44.    However, the Plaintiff pointed out to Ms. Satherlie that the information was already contained in the document in question. (Affidavit of Knight ¶20) Ms. Satherlie had not even bothered to read the plan before she berated and insulted the Plaintiff in public.(Affidavit of Knight ¶20)

45.    The Plaintiff also testified in her deposition that Ms. Satherlie treated part-time white employees in a more respectful manner than she treated the Plaintiff, who was a full-time Director of the 21st Century Program:

> Q:    .... Are you claiming that Ms. Satherlie addressed you in a disrespectful manner?
> A.    Courteous.  She tended to be polite, kind and more friendly toward Madonna than me.
> Q.    Can you provide me with any specifics of how you were treated such as it states here in your sworn response to Interrogatory 7?
> A.    She would come in and sometimes she would question Madonna about things and I would stand there and either have - if I was talking to Lynn, Madonna would interrupt me, interject and say, "I can find this, I can do that."  And I

felt that they just had developed a rapport, you know, where I was not in the loop.

Q.    I would like you to identify for me any specific events that you can recall in which you claim that Ms. Satherlie or Ms. Maxwell, spoke with you disrespectfully, Any specific events, specific conversations?

A.    Well, when Lynn sat in the cafeteria that day and she said that I was a liar, that I was lying to her, the day I didn't make the meeting, I thought that that was totally out of order because she didn't really give me a chance to talk. And after I explained it to her, she still went and wrote it up that I was lying to her.  So, I just felt that was a lack of respect....

Q.    Is there anything about that conversation to suggest to you that she was showing you disrespect because you're African-American?

A.    It was a tone and manner.  It was always a demeaning tone and manner.  It was an overall general tone and manner.

Knight Depo p. 211-213.

46.    Reesa Cannada complied with the Hospital's pre-employment hiring process.

(Affidavit of Knight ¶21) Reesa Cannada stated that Satherlie would not pay her back pay unless she misrepresented that she taught the Fall 2001 Drill/Step class. (Affidavit of Knight ¶21)

47.    The Plaintiff expressed that the out of pocket funds were important to her.

A. .... I purchased them out of my pocket which meant took part of my salary instead of using it towards my mortgage or my child's tuition in college, I used my salary in order to run the 21st Century.  That's not what I was working for.

(Knight Depo p. 147-48)

PLAINTIFF

By:  _____
      Christine E. Corriveau, Esq.
      Miniter & Associates
      100 Wells Street.
      Hartford, CT 06103
      (860) 560-2590  Federal Bar # No.: ct21212

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been mailed to the following counsel of record this ____ day of January, 2004:

9

Gregg P. Goumas
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103

Ann F. Bird, Esq.
Assistant Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT 06103

_____

Christine E. Corriveau