UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELAINE KNIGHT, | : | |
| Plaintiff | : | CIVIL ACTION NO: 3:02CV1697 (MRK) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD HOSPITAL, | | |
| HARTFORD PUBLIC SCHOOLS | : | |
| LYNN SATHERLIE and | : | |
| SUSAN MAXWELL, | : | JANUARY 23, 2004 |
| Defendants | : | |

## AFFIDAVIT OF ELAINE KNIGHT

The Undersigned, being over the age of eighteen and believing in the obligations of an oath, and being duly deposed, hereby make affidavit and state:

1.     I am an African-American female and was at all times relevant to this lawsuit residing in Bloomfield, Connecticut. I was employed by Hartford Hospital as a full-time Coordinator of the Hospital's 21st Century Program from January 2, 2001 through June 21, 2001. The 21st Century Program awards grants to urban and inner city public schools to enable them to plan, implement and/or expand projects that benefit educational, social services, health, recreational and cultural needs of the community.

2.     Defendant Hartford Public Schools housed the 21st Century Program in Bulkely High School and employed and supervised Plaintiff's co-workers.

3.     Defendant Hartford Hospital, whose business address is 80 Seymour Street, Hartford, Connecticut, is a non-profit, non-stock corporation existing under the laws of the State of Connecticut and employs more than 100 persons.

4.     Lynn Satherlie, a Caucasian female, was the Director of the 21st Century Program and was my immediate supervisor.

5.      Susan Maxwell, a Caucasian female, is the Supervisor of Satherlie.

6.      My office was located at Bulkeley High School, which is located in Hartford, Connecticut.

7.      I was treated differently than similarly situated employees, in that I was not given access to basic office resources that the other employees were, such as phones, fax machine, copier, scissors, etc. despite numerous requests to my Supervisor, Satherlie.

8.      On Thursday, May 24, 2001, while I was out of work to attend my child's graduation, without any notice, my office space was dismantled and records and files were removed from my desk without my knowledge or consent, and computer files deleted. The only person who knew I would not be in work that day was my Supervisor at Hartford Hospital, Lynn Satherlie. Other white employees, such as Carmel Sinapoli, were given notice by the Hartford Public Schools that their offices were to be dismantled. Satherlie informed me that Ms. Irizarry, the Principal, would be meeting with the me to explain why my office had been removed. The meeting never took place.

9.      Having my office dismantled prevented me from being a more productive worker. However, my work performance remained satisfactory or better, and despite the disruption, I completed the summer program.

10.     At no time did my work suffer because of my husband's illness. I do not agree with the March 21st memo because I never received a copy of the document, nor do I recall any such phone conversation with Satherlie.

11.     Satherlie and Hartford Hospital failed to supply the 21st Century Program with adequate supplies and asked me to purchase what was needed, which I did on several occasions. When Madonna Noir (white) asked for supplies, Satherlie purchased them for her. Satherlie then

began to purchase the supplies for the Program after Madonna requested it.

12.     In January or February of 2001, I informed Lynn Satherlie that no transportation was being provided for the 21st Century's after school programs. Satherlie told me to increase the number of programs in spite of no transportation. I was forced to drive students home myself, as well as find other teachers to provide transportation. Despite this, I managed to create a new "self discipline" course, which required that I hire a qualified teacher, acquire a list of interested students, and find a padded classroom to conduct the class. Satherlie canceled the class a day before it was supposed to start. I also was on the Board of Directors of the Literacy Volunteers of Hartford and was attempting to put together an adult program in connection with that, but could not do so because of lack of transportation. Satherlie gave me a poor performance reviews indicating that I did not create new programs, although the only reason I did not do so was because of her influence and the lack of transportation. When I spoke to Ms. Satherlie regarding the poor performance reviews, she acknowledged that they were due to the fact that it was difficult to start new programs because of the lack of transportation. She stated that "any new program usually had difficulty getting off the ground." Ms. Satherlie stated that it would be easier for me in the Fall when there would be transportation to support the programs that we were trying to run. Satherlie told me not to be concerned with the poor performance reviews.

13.   I made numerous attempts to hire bus transportation for the 21st Century Programs. I even went to the bus companies to try to arrange a credit line for the buses, but I was denied. On a few occasions, I was able to hire the Washington Bus Company for field trips, but only because I knew the owner, Betty Washington. When I informed Satherlie about the lack of transportation, she told me to ask Hartford Public Schools for the money. Hartford Public Schools told me that Hartford Hospital must pay for it. Other after school programs received bus

transportation automatically, without having to request it over and over.  Finally, I succeeded in

obtaining bus transportation on or about May 30, 2001 after Earl Gardener became Program

Director for the Hartford Board of Education.  I asked Madonna Noir to call Mr. Gardner to ask

about the buses.  She was told that the funds were gone for transportation.  I then called Mr.

Gardner back and asked him how there could be no funds for transportation when I've never had

a bus.  I told him that without buses, there would be no more 21st Century Program.  That

evening, Mr. Gardner provided two buses for the program.

14.     I do not agree with the April 21, 2001 memo because I was not given the

resources to run the 21st Century Program.  Not only was I not given the transportation, I was not

given the supplies and office equipment to adequately run the program.  The only way the 21st

Century Program had some office supplies were when some of the employees brought in their

own equipment from home.  For example, Erica Stanisclaus brought in a fax machine from home

for the 21st Century Program to use.

15.     On or about April 30, 2001, I informed Satherlie that I believed Emil Nace had

falsified teaching an SAT class.  Satherlie told me to pay him anyway, even though he had not

gone through the Hartford Hospital Human Resources procedures for hiring, because it was not

much money.  I then conducted an investigation into the matter, polling the students with

questionnaires on whether they had attended Mr. Nace's class.  Other teachers and I were in the

process of collecting the questionnaires when Defendant Hartford Public Schools caused my

office to be dismantled and files were removed, one of which contained the results of the

questionnaires.  Because the files were removed, this was the reason that I could offer no

"credible" evidence of Mr. Nace's falsification of documents.  Up until the files were removed, I

had the following evidence against Mr. Nace: 1) All of the signatures on the Parent

authorizations looked the same; 2) Mr. Nace claimed to have taught classes during the week of school vacation, when the school was closed; 3) one of the students Mr. Nace claims to have had in his class, Ardita Ruco, was attending another class on the same day; and 4) upon giving Mr. Nace applications to give to the students, he returned all of them to me on the following day. No other teacher has ever collected applications from the students participating in their class overnight.

16.    During my extremely brief June 6, 2001 phone conversation with Ms. Satherlie, I did not lie regarding missing the mandatory 21st Century meeting. I had both suffered a seizure that morning and had also been speaking with Madonna Noir. Both reasons are true and they are not mutually exclusive.

17.    On June 15, 2001, I entered the office and spoke to Margarita Santana. I requested a meeting with Vice Principal Santiago to find out why my office had been dismantled. Ms. Santana told me he would not be able to see her until the Fall. She then suggested that I see Vice Principal Lopez. On my way to Mr. Lopez's office, I ran into Ms. Principal Irizarry. I told her that Satherlie had told me that Irizarry would tell me why my office was dismantled. Irizarry told me she did not have the time to meet with me. I went to Mr. Lopez's office, but he did not know what had happened to my office. At that time, I started cry, and Mr. Lopez allowed me to cry in his office for quite a while. Mr. Lopez told me I would have to talk to Vice Principal Santiago. I went and looked into Mr. Santiago's office, but he told me he did not have time to meet with me.

18.    On June 15, 2001, I did not make any inappropriate comments to Principal Irizarry, Vice Principal Santiago or Margarita Santana. I never said "you have an attitude." I never said to anyone that "you will not speak to me because I'm a black woman," and I did not call Vice Principal Santiago a coward. I did not raise my voice at any time.

19.     One June 21, 2001, Susan Maxwell terminated me because of alleged "poor performance" and insubordination.

20.     Upon information and belief, on numerous occasions, Satherlie treated African Americans differently than Caucasians.  For example,  Satherlie fired a black female teacher, Antoinette Outlaw, because she allegedly lied on her job application.  Another teacher, Emil Nace, a white male, falsified attendance and permission slips, and Satherlie told the Plaintiff "What difference does it make, pay him anyway."  Ms. Satherlie treated me in a very disrespectful manner on a number of occasions.  Her tone with me was condescending.  For example, during a parent-teacher meeting, when I attempted to present my program goals and objectives to the group, Ms. Satherlie berated me in front of the entire group, insinuating that I had left out important material from the plan.  However, I pointed out to Ms. Satherlie that the information was already contained in the document in question.  Ms. Satherlie had not even bothered to read my plan before she berated and insulted me in public.

21.     To the best of my knowledge and belief, Reesa Cannada complied with the Hospital's pre-employment hiring process   When I spoke to Reesa Cannada, she stated that Lynn would not pay her back pay unless she misrepresented that she taught the Fall 2001 Drill/Step class.

Dated at Hartford, Connecticut this 23rd day of January , 2004.

*Elaine Knight*

Elaine Knight

Subscribed and sworn to before me this 23rd day of January, 2004.

*Christine E. Corriveau*

Christine E. Corriveau
Commissioner of the Superior Court