UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELAINE KNIGHT, | : CIVIL ACTION NO. |
| | : 3:02-cv-1697 (MRK) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| HARTFORD HOSPITAL, et al. | : |
| | : |
| Defendants. | : February 9, 2004 |

### DEFENDANT HARTFORD HOSPITAL'S REPLY MEMORANDUM
### TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

In her memorandum in opposition to Hartford Hospital's (the "Hospital") Motion for Summary Judgment, plaintiff desperately attempts to state a prima facie case of race discrimination by pointing to alleged differences in the way the Hospital treated White and Black employees. However, for the reasons set forth in the Hospital's Memorandum in support of its Motion for Summary Judgment, as well the reasons discussed below, plaintiff has failed to meet her burden of establishing a prima facie case. Further, even if she could establish a prima facie case, plaintiff cannot demonstrate that the Hospital's legitimate non-discriminatory reason for terminating her employment was false, and the record is otherwise devoid of any evidence of discrimination.

I. TO THE EXTENT THAT PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT FAILS TO COMPLY WITH THE LOCAL RULES OF CIVIL PROCEDURE, DEFENDANT'S LOCAL RULE 56(a)(1) STATEMENT SHOULD BE DEEMED ADMITTED.

Local Rule 56(a)(1) requires a moving party to set forth "in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends

there is no genuine issue to be tried."[1] Rule 56(a)(1) also states in unequivocal terms that "all material facts set forth in [the Local Rule 56(a)(1)] statement will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2." In accordance with Local Rule 56(a)3, each denial in Knight's 56(a)2 Statement "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or evidence that would be admissible at trial."

To the extent that Knight's Local Rule 56(a)(2) Statement does not comply with the requirements of Local Rule 56(a)3, the corresponding facts in the Hospital's Local Rule 56(a)1 Statement should be deemed admitted. Specifically, paragraphs numbered 16 through 20, 23, 25, 26, 28 through 34, 39, 40, 45, 46, 49, 52, 53, 57 and 60 should all be deemed admitted because plaintiff has failed to either admit or deny, failed to cite to admissible evidence, or claimed insufficient knowledge to admit or deny.[2]

---

[1] Local Rule 56(a)(2) provides:
> The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)(2) Statement," which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)(1) Statement whether each of the facts asserted by the moving party is admitted or denied. The Local Rule 56(a)2 Statement must also include a separate section entitled "Disputed Issues of Material Fact" a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

[2] District Courts within this jurisdiction have repeatedly held that parties opposing a motion for summary judgment must submit a Local Rule 56(a)2 Statement that complies with Local Rule 56 (or its predecessor, Local Rule 9(c)). See Hogan v. State of Connecticut Judicial Branch, 220 F.Supp. 2d 111, 114 (D.Conn. 2002)("A party responding to a motion for summary judgment presumably has conducted discovery and should have a reasonable, factually supported basis to admit or deny any factual assertions made in the case. Therefore, the court considers admitted any statement with which the plaintiff lacks sufficient knowledge to agree or disagree"); Soares v. University of New Haven, 154 F.Supp. 2d 365, 368 (D.Conn. 2001)(non-conforming Rule 9(c)2 statement is of "virtually no assistance" to Court; summary judgment granted); Mr. And Mrs. A v. Dr. Mary Jane Weiss, 121 F.Supp. 2d 718, 721 (D.Conn. 2000)(legal argument and conclusions of law set forth in a plaintiff's Rule 9(c)2 Statement, coupled with plaintiff's failure to either admit or deny the factual assertions by defendant is a "Statement" not in compliance with the Local Rule and will result in all of defendant's assertions as being deemed admitted); Kresmery v. Service America Corporation, 227 B.R. 10, 13 (D.Conn. 1997)("Local Rule 9(c) is more than a mere procedural nicety, rather it contains mandatory language and is 'strictly interpreted'").

## II. PLAINTIFF CANNOT STATE A PRIMA FACIE CASE OF RACE DISCRIMINATION BECAUSE SHE IS UNABLE TO DEMONSTRATE THAT HER EMPLOYMENT WAS TERMINATED UNDER CIRCUMSTANCES GIVING RISE TO AN INFERENCE OF DISCRIMINATION.

(a)   "Out of Pocket" Expenses

Plaintiff claims that she was required to advance funds to purchase supplies for the 21st Century Program while her administrative assistant, Madonna Noir, who is White, was provided with supplies on request. Plaintiff's Memorandum ("Pl. Memo") at 11. Plaintiff takes issue with the Hospital's characterization as "insignificant" the cost of the supplies for which she was allegedly required to advance funds. Id. However, the transcript is clear, plaintiff testified that the cost of the supplies was insignificant: "No, it wasn't a significant amount." Id.; Knight Depo. at 148-49. Further, even if plaintiff was required to advance funds for office supplies on one or two occasions, her testimony reveals that she certainly did not attach much significance to it. In addition to no being able to recall the cost, she does not remember the dates on which she had to make the purchases (Knight Depo. at 148), or the type of supplies she had to purchase. Id. at 149-50. Most importantly, however, is the fact that plaintiff admits that she was fully reimbursed on the at most "two or three occasions" she claims she had to advance funds for supplies. Id. at 147-48.[3]

---

[3] Despite her clear and unequivocal deposition testimony at page 147, lines 13 through 19, that she was fully reimbursed for all supplies, Knight now denies in her Local Rule 56(a)2 Statement at paragraph 7, that "each time [she] bought supplies using her own funds she was reimbursed." In support of her denial, she cites to an earlier portion of her deposition testimony at page 102 wherein she testified that when her office was allegedly "dismantled" some receipts for refreshments she had purchased for the program were missing. However, plaintiff does not contend anywhere in her memorandum that she ever sought and was denied reimbursement for any such items based on her race. Indeed, such an assertion would contradict her subsequent deposition testimony. See Def. 56(a)2 Statement ¶ 8.

3

Plaintiff cites McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) in support of her argument that she was "similarly situated" to her administrative assistant, Noir. However, in finding that the plaintiff and another employee were similarly situated in all material respects, one of the factors that the court in McGuiness specifically considered was that the plaintiff and the other employee "held positions of roughly equivalent rank...." As discussed in the Hospital's memorandum, unlike the individuals being compared in McGuiness, Knight and Noir held *very different* positions. Knight was a salaried, full-time managerial employee, who had the primary on-site responsibility of coordinating the 21st Century Program, while Noir was Knight's part-time hourly administrative assistant whose initial role with the 21st Century Program was that of an unpaid volunteer. They cannot be deemed similarly situated.

(c)     **Disrespectful Treatment of Plaintiff[4]**

Plaintiff clearly has no admissible evidence that her supervisor, Lynn Satherlie, treated her with disrespect based on her race. The testimony cited by Knight in her Memorandum adds nothing to her claim. Pl. Memo at 13-14. Even if plaintiff could establish that "Ms. Satherlie was disrespectful towards her in her tone and manner," which the defendant denies, Knight has absolutely no evidence that such treatment was due to her race. It is undisputed that Knight never heard Satherlie or Susan Maxwell make any racially derogatory remarks. Plaintiff's 56(a)(2) Statement ¶¶ 5, 6. The purpose of Title VII is to eliminate discrimination in the workplace; it does not protect employees from even irrational

---

[4] Plaintiff concedes that she never requested flexible work hours from the Hospital. Pl. Memo at 12. Thus, the Hospital will not address that claim.

employers who act in a generally abusive manner. See Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066 (1979); see also Oncale v. Sundower Offshore Services, Inc., 523 U.S. 75, 78, 119 S.Ct. 998 (1998). (Title VII prohibits discrimination and does not create a "general civility code."). Plaintiff's allegations of disrespectful treatment do not give rise to a claim under Title VII.[5]

> (d) Nace Allegedly Being Paid for Hours That He Did Not Work, while Plaintiff Did Not Receive Overtime Pay.
> (e) Satherlie Fired a Black Teacher Because She Allegedly Lied on Her Application But Told Plaintiff to Pay a White Teacher Who Had Falsified Attendance and Permission Slips.

Contrary to plaintiff's assertion that the Hospital did not address Point "d" above, the Hospital briefed points "d" and "e" together at pages 18-21 of its Memorandum. First, Knight claims that Satherlie treated her differently than Emil Nace, who is white, because she was not paid overtime but he was allegedly "paid for time her did not work." Plaintiff has not responded to the Hospital's argument with respect to this claim and has, presumably, abandoned it. In connection with Point "e", Knight claims that "Satherlie treated Mr. Nace, a white man, who allegedly lied and stole from the program, differently than she treated Ms. Outlaw, who did nothing illegal and filled out her application the way she was required." Pl. Memo at 16. First, under Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2d Cir. 1997), the plaintiff must compare *herself* to employees who are "similarly situated in all material respects" in order to demonstrate differential treatment. Here, however, plaintiff

---

[5] Plaintiff argues that defendant is "asking the Plaintiff for hard proof that Ms. Satherlie was disrespectful towards her in her tone and manner" and that "this subject is not suitable for a motion for summary judgment because it is a credibility issue." Pl. Memo at 14. This argument requires little comment. To state a prima facie case, Knight must demonstrate that Satherlie treated similarly situated White employees differently. Testimony pertaining to plaintiff's hurt feelings does not satisfy this burden.

5

attempts to demonstrate differential treatment that is entirely unrelated to her. This is not sufficient under Shumway. Nevertheless, the undisputed facts still do not support Knight's claim that Satherlie treated similarly situated white and black employees differently. Nace and Outlaw were clearly not similarly situated to one another. The undisputed facts are as follows: (1) Knight never presented Satherlie with *any* physical and/or other credible evidence that Nace committed any wrongdoing (Pl. 56(a)2 ¶ 18; Knight Aff. ¶ 15); (2) Knight testified that she did not know whether Nace had, in fact, taught the classes he claimed to have taught (Pl. 56(a)2 ¶ 17); and (3) Satherlie played no role in the decision to terminate Outlaw's employment. Pl. 56(a)2 ¶23. Because the circumstances surrounding Nace and Outlaw were so dramatically different, a comparison of their employment situations would be improper.

### (f) Failure to Supply Resources, Transportation and Administrative Support Unfair Expectations Placed on Knight by Satherlie to Transport Students in Her Car.

In her memorandum, plaintiff claims that "the failure of Hartford Hospital to supply her with resources was an attempt to sabotage her efforts to run the 21st Century Program." Pl. Memo at 16-17. While counsel's argument may be creative, it finds no support in the record. As discussed in the Hospital's memorandum, at plaintiff's deposition, when questioned about why she thought she had been denied access to various resources based on her race, Knight testified because "it appeared that the other non-African American people had access to things that I didn't have access to." Knight Depo. at 221-22. However, the employees Knight refers to were employees of the Hartford Public Schools ("HPS"). Id.

6

The Hospital played no role in providing any resources to HPS employees. Id.[6] Knight also writes in her memorandum that "the fact that other after school programs had bus transportation and the Plaintiff's program didn't have it is also proof of disparate treatment." Pl. Memo. at 18. However, nowhere in her memorandum does plaintiff identify these alleged programs. Plaintiff testified at her deposition that she had no idea whether the Hospital was involved in any other 21st Century Programs, and that she had no basis to claim that she was treated differently than any White program coordinators based on her race. Knight Depo. 75-77. In fact, it is undisputed that the Hospital is not involved with any other 21st Century Programs. Pl. 56(a)2 ¶ 28. When questioned further on this point, Knight conceded that she has no factual basis for her claim that she was wrongfully deprived of transportation for the 21st Century Program based on her race:

> Q:  Would I be correct that you don't have any factual basis for your claim that you weren't being provided with bus transportation for your students due to your race?
> A:  Yeah, I guess so, yes.

Knight Depo. at 184.

### (g) Satherlie's Alleged Unfair Hiring Practices

In her memorandum, Knight claims that "Ms. Outlaw and Ms. Stanisclaus were put through certain hiring procedures, but these procedures were waived for Mr. Nace, a white

---

[6] In her memorandum, Knight also claims *for the first time* that she "managed to create a new 'self-discipline' course, which required that she hire a qualified teacher, acquire a list of interested students, and find a padded classroom to conduct the class. Satherlie canceled the class a day before it was supposed to start. Then she gave Plaintiff a poor performance reviews indicating that she did not create new programs." Assuming for the moment that Knight's assertion is true, which the Hospital *does not* concede, Knight has no admissible evidence that Satherlie was motivated by a discriminatory animus. Moreover, in response to the Hospital's interrogatories, Knight never disclosed this as an act of alleged discrimination. See Appendix, at Tab 5, nos. 5 and 7.

male." Pl. Memo at 19. This claim does not serve as evidence of differential treatment based on race. First, like point "e" above, this allegation has *nothing* to do with Knight. It is not evidence that Satherlie treated *her* differently than similarly situated employees. Second, even if it were possible for Knight to create an inference that Satherlie was motivated by a discriminatory animus by showing that she treated similarly situated White and Black employees (totally unrelated to Knight) differently, she could not do so in this case because the employees in question were not similarly situated. First, Nace – unlike Stanisclaus and Outlaw -- was a full-time teacher with the HPS hired to teach a one-time SAT prep class. Because HPS teachers were already authorized to work with students, they were not required to undergo background checks. Satherlie Aff. ¶ 18. Most importantly, however, it is undisputed that Satherlie played *no role* in determining what pre-employment procedures any 21st Century employee or independent contractor needed to fulfill before being paid by the Hospital. Pl. 56(a)2 ¶ 31. The Hospital's Payroll Department and Department of Human Resources made this determination. Satherlie Aff. ¶ 19.

(h)   **Satherlie Allegedly told Plaintiff to Ignore Warning Letters.**

Plaintiff claims that Satherlie told her "not to be concerned with the poor performance reviews." Pl. Memo at 21. While defendant vehemently denies that Satherlie ever told plaintiff to ignore any of the written warnings she was issued (Satherlie Aff. ¶ 23), even assuming she did, it is not evidence of race discrimination.[7]

---

[7] Although not material to the Hospital's motion for summary judgment, the "performance review" Knight is apparently referring to is the April 12, 2001 memorandum (the "PIP Memo") placing her in the Hospital's Performance Improvement Process. Knight Depo. at 196-97. When questioned at her deposition about whether she disagreed with any of the objectives set out for her the PIP Memo, Knight failed to mention anything about Satherlie allegedly canceling a class the day before it was scheduled to start.

8

(i) **Plaintiff's Office Was Dismantled and Satherlie Failed to Support Knight with the Bulkeley Administration.**

In her Memorandum, Knight seems to suggest that Satherlie facilitated the dismantling of Knight's office because Satherlie was the "only person who knew Plaintiff would not be at work that day." Pl. Memo at 21. Not only is plaintiff's assertion self-serving, it contradicts her sworn deposition testimony and should be disregarded.[8] Pl. 56(a)2 ¶ 33. Knight testified that she had no reason to believe that Satherlie or any other Hospital employee played any role in the "dismantling" of her office. Id. Further, it is undisputed that after Satherlie learned that plaintiff's workspace had been disturbed, she spoke with a Bulkeley High School Official and was informed that someone would speak with Knight about it. Pl. 56(a)2 ¶ 34.

(j) **Outlaw was Allegedly Not Paid on time while Nace was paid Promptly.**

Again, plaintiff attempts to create an inference of discrimination by pointing to alleged differential treatment of other white and black employees. As discussed above in Points "e" and "g", plaintiff cannot create an inference of discrimination by alleging differential treatment totally unrelated to her. In the Hospital's Memorandum, it demonstrated that both Outlaw and Nace were paid within the same amount of time – 20 days. Def. Memo at 27. However, plaintiff now claims that the Hospital's argument is flawed because "Outlaw worked for a whole month before [the Hospital] requisitioned her paycheck." Pl. Memo at 22. If there was any delay in requisitioning Outlaw's paycheck –

---

[8] It is well settled that a "party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony." Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).

which the Hospital denies, that delay was *solely* attributable to the plaintiff. Plaintiff testified as follows:

> Q: Specifically, with reference to Ms. Outlaw, when do you claim you provided these timesheets?
> A: I remember one. I believe it was like March the 9th, or it was in the very beginning of March....

Knight Depo. at 62-63. It is undisputed that Satherlie approved and submitted the check requisition for Outlaw's paycheck on March 9 - the *same day* plaintiff submitted it.[9] Pl. 56(a)2 ¶ 35.

### (k) Payments to Reesa Cannada

Plaintiff clearly has no personal knowledge as to whether Cannada complied with the Hospital's pre-employment requirements, as her assertions are based on her information and belief. Pl. Memo at 22. The reason for the delay in Cannada receiving her check is explained in the Hospital's Memorandum based on Satherlie's first-hand knowledge. Def. Memo at 27-28. Moreover, as discussed above, plaintiff cannot establish an inference of discrimination by relying on alleged differential treatment totally unrelated to her.[10]

## III. THE HOSPITAL HAD A LEGITIMATE NON-DISCRIMINATORY REASON FOR TERMINATING KNIGHT'S EMPLOYMENT.

Plaintiff clearly is not able to establish a prima facie case of race discrimination. Thus, the Court's analysis need proceed no further and plaintiff's case should be dismissed.

---

[9] Furthermore, as reflected on the Outlaw check requisition, Outlaw worked a total of 10 ½ hours over three days, Feb. 27, March 1 and 8. See App. at Tab 2(D). Her paycheck was requisitioned on March 9. Thus, Outlaw had worked only approximately 11 days before her check was requisitioned.

[10] Plaintiff also maintains that it is her "belief that Ms. Cannada was not paid earlier because Satherlie would not pay her back pay unless she misrepresented that she taught the Fall 2001 Drill/Step class." Pl. Memo at 23. The Hospital has absolutely no idea what plaintiff is referring to in this entirely new accusation, but surmises that this statement is nothing more than yet another gratuitous accusation of some wrongdoing by Satherlie. Moreover, this allegation has nothing to do with the issue of race discrimination.

However, even if plaintiff could establish a prima facie case, the Hospital had a legitimate, non-discriminatory reason for terminating her employment. As discussed in the Hospital's memorandum, the principal motivating reason for Knight's termination was her rude and unprofessional conduct toward the Bulkeley administrators on June 15, 2001. Def. Memo at 29-30; Pl. 56(a)2 ¶¶ 52-57. In addition, Satherlie also considered Knight's outburst toward her in connection with Knight's June 7 warning, her questionable truthfulness about why she missed a mandatory weekly program meeting, and her continuing performance problems. Id. In an attempt to show pretext, Knight claims merely that "the charges made against the plaintiff were untrue." Pl. Memo at 23. Plaintiff's self-serving blanket denials are legally insufficient.

It is undisputed that Satherlie was provided with three memoranda and had a telephone conversation with Bulkeley Principal Evelyn Irizarry pertaining to Knight's June 15th disrespectful conduct toward the Bulkeley administrators. Pl. 56(a)2 ¶¶ 52-56. It is also undisputed that Satherlie believed that the plaintiff was being untruthful about the reason she missed the June 6 mandatory weekly meeting. Pl. 56(a)2 ¶46. However, for purposes of summary judgment, the Court need not decide whether Knight is being truthful in her denials because the undisputed facts conclusively establish that Satherlie had a good-faith basis for her decision to terminate Knight's employment.[11] "Court's have held employers are not liable under Title VII when they have a good faith, albeit mistaken, belief a legitimate cause for discharge existed." Wheeler v. Snyder Buick, Inc., 794 F.2d 1128, 1233 (7th Cir. 1986);

---

[11] In fact, plaintiff admits that she has "no knowledge of Satherlie's thought process." Pl. 56(a)2 ¶ 57. Thus, there is *no conceivable way* for plaintiff to demonstrate pretext.

11

see also Bonaparte v. New York City Dept. of Housing Preservation and Development, Case. No. 94-cv-5105(DC), 1997 U.S. Dist. LEXIS 3761, at *6 (S.D.N.Y. March 31, 1997)[12] (citing Wade v. New York Tel. Co., 500 F.Supp. 1170, 1176) (S.D.N.Y. 1980). Thus, the Hospital is entitled to summary judgment on plaintiff's Title VII claim based on her discharge from employment.[13]

### IV. PLAINTIFF CANNOT DEMONSTRATE THAT SHE WAS SUBJECTED TO A RACIALLY HOSTILE ENVIRONMENT.

Plaintiff relies on two events as the basis for her hostile environment claim: (1) an alleged instruction by Satherlie to choose to retain one of two administrative assistants; and (2) an instruction by Satherlie to terminate the employment of Outlaw for failing to note a felony conviction on her application. Pl. Memo at 24. Plaintiff argues that "Satherlie put the Plaintiff in the position of making employment decisions for her employees based on the color of their skin rather than their conduct" and that "Plaintiff believe[s] this led to a racially hostile environment." Id. Significantly, Knight has produced absolutely *no evidence* that anyone in her workplace ever made *any* racially derogatory remarks or ever threatened her in anyway. For that reason alone, the Hospital believes that it is impossible for Knight to meet her burden of demonstrating that her workplace was "permeated with discriminatory intimidation that was sufficiently severe to alter the conditions of [her] work environment." Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986). Further, she is

---

[12] Copy attached hereto at Tab A.

[13] Even if the plaintiff could state a prima facie case of race discrimination – which defendant maintains she cannot - and make some showing that the Hospital's reason for terminating her employment was pretextual, she could not ultimately prove discrimination. "[W]hen a prima facie case is weak, and evidence of pretext is also weak, a plaintiff must have other evidence of discrimination to sustain her burden of proof." Winiarski v. State of

12

unable to present any evidence that Satherlie's alleged conduct created a working environment that was both objectively and subjectively hostile. Raniola v. Bratton, 243 F.3d 610, 620 (2d Cir. 2001).[14] With respect to her claim that she was forced to choose between two administrative assistants, Knight concedes that she was permitted to retain both administrative assistants. Knight Depo. at 129-30. Regarding Satherlie's instruction to terminate Outlaw's employment, Knight concedes that she never presented Satherlie with any credible evidence that Nace had falsified documents. No reasonable person could conclude that such conduct would give rise to a hostile work environment. Summary judgment should be granted on her hostile environment claim.[15]

## V. CONCLUSION

For the reasons discussed above, along with the reasons discussed in the Hospital's Memorandum in support of its Motion for Summary judgment, plaintiff's Complaint should be dismissed.

---

Connecticut DPH, 273 F.Supp.2d 189, 192 (D.Conn. 2003) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097 (2000)).

[14] In determining whether an environment was objectively hostile, the Second Circuit has rejected a "reasonable black person standard." See Richardson v. New York State Dept. of Corr. Svcs., 180 F.3d 426, 436 (2d Cir. 1999).

[15] Having not briefed her Title VII retaliation claim, plaintiff has apparently abandoned it.

Respectfully Submitted

DEFENDANT,
HARTFORD HOSPITAL

By: /s/ *signature*
Brenda A. Eckert
Federal Bar No. CT 00021
Gregg P. Goumas
Federal Bar No. CT 19095
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819
Tel: (860) 251-5000
Fax: (860) 251-5599

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Defendant, Hartford Hospital's Reply to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment was mailed on this 9th day of February, 2003, via first class mail, postage prepaid, as follows:

Christine Corriveau, Esq.
Miniter & Associates
147 Charter Oak Avenue
Hartford, CT 06106
(counsel for the plaintiff)

Ann F. Bird, Esq.
Assistant Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT 06103
(counsel for Hartford Public Schools)

With Courtesy Copy (via hand-delivery) to:

The Honorable Mark R. Kravitz
Chambers
United States District Court
141 Church Street
New Haven, CT 06510

_____
Gregg P. Goumas

358988 v.01